[S. F. No. 10902. In Bank.—February 23, 1926.]

In the Matter of the Estate of ABRAHAM GARTENLAUB, Deceased. ALICE G. B. GARTENLAUB, Appellant, v. UNION TRUST COMPANY OF SAN FRANCISCO (a Corporation), as Trustee, etc., et al., Respondents.

[1] TRUSTS—ACCRETIONS TO TRUST FUND—INCREASE OF CORPUS—INCOME—RIGHT OF LIFE BENEFICIARY.—Accretions to a trust fund resulting from the increase in value of the bonds or other securities in which its *corpus* is invested, due to whatever cause, are to be regarded as part of the *corpus* of the trust and not as income or revenues or profits to which the life beneficiary is entitled.

[2] ID. — PURCHASE OF BONDS AT DISCOUNT — DUTY OF TRUSTEE— RIGHT OF LIFE TENANT TO DISCOUNT.—Whenever bonds are purchased by the trustee at a discount, the amount of such discount remains in the hands of the trustee as an uninvested part of the *corpus* of the trust estate, and it is the duty of the trustee to make timely investment of the same in other securities, to the interest upon which as it accrues the life tenant would be entitled; and this is all to which the life tenant is entitled, where the trust provides that the payments to her are to be made out of the "net income, revenue and profit of every kind arising from" the trust estate, and the trustee is not required to pay such discounts to the life tenant or even accumulate them for her benefit.

(1) 39 Cyc., p. 444, n. 15.   (2) 39 Cyc., p. 444, n. 18 New.

APPEAL from an order of the Superior Court of the City and County of San Francisco settling the account of a trustee. Frank H. Dunne, Judge. Affirmed.

The facts are stated in the opinion of the court.

Garret W. McEnerney and Andrew F. Burke for Appellant.

Norman A. Eisner, Heller, Ehrman, White & McAuliffe and Samuel S. Stevens for Respondents.

2.  See 25 Cal. Jur. 341; 26 R. C. L. 1305.

RICHARDS, J.—This appeal is from an order of the
superior court in and for the city and county of San Fran-
cisco settling the sixth annual account of the respondent
Union Trust Company of San Francisco as trustee of the
trusts created by the last will and testament of Abraham
Gartenlaub, deceased.  The appeal is prosecuted by Alice G.
B. Gartenlaub, the widow of said deceased and a life bene-
ficiary under the terms of his last will and of the trusts
created thereby; and the sole question presented upon this
appeal involves the extent, if any, of the right of said life
beneficiary entitled to the ''net income, revenue and profit''
of the trust properties in the hands of said trustee to have
the discounts, if any, at which bonds are purchased by the
trustee accumulated for her benefit and paid over to her by
the trustee.  Abraham Gartenlaub died in the city and
county of San Francisco on June 1, 1914.  His will was
thereafter admitted to probate and his estate distributed
according to its terms.  By his said last will and testament
practically his entire estate, then appraised at the sum of
$476,900.42, was devised and bequeathed to the Union
Trust Company of San Francisco as trustee for the uses
and purposes therein set forth.  The trusts thereby im-
pressed upon said properties and imposed upon said trustee
were the following:

''First: As soon as may be to sell and convert into money
said entire estate and property (except such portion thereof,
if any, as may consist of money or of securities of the kind
or kinds hereinafter authorized as and for investments for
and on account of this trust estate, and except also that the
home hereinabove referred to shall not be sold during the
lifetime of said Alice G. B. Gartenlaub, unless she shall in
writing consent thereto, or unless she shall have relinquished
her right in and to the said home, or any part thereof).

''Second: To invest and re-invest the same and also the
proceeds thereof arising from such sale or sales and from
time to time to change investments with full power and
authority to do all and everything requisite or advisable
for the efficient discharge of its duties hereunder and subject
only to the rules of law and equity applicable to such cases,
or as is herein provided, and said trustee is hereby authorized
and empowered to invest said trust estate in the securities
mentioned immediately hereinafter, to wit:

"(a) In loans secured by first mortgage on first class real estate, to an amount not exceeding sixty per cent of the value of the security;

"(b) Bonds of the municipalities of the State of California;

"(c) Bonds of public school districts of the State of California;

"(d) Bonds of the various counties in the State of California;

"(e) Bonds of the State of California; and

"(f) First mortgage bonds of commercial railroads, but not including street or interurban railroads; and subject further to the provision that no investment in the bonds of any one debtor, whether state, county, municipal or corporate, shall exceed the sum of twenty thousand ($20,000) dollars and further that no investment shall be made in the stocks of any corporation whatsoever, nor in the bonds of the United States, for the reason that said bonds yield too low a rate of interest.

"Third: To have and to receive the rents, issues, income and revenue of every kind of said trust estate during the lifetime of said Alice G. B. Gartenlaub and Mrs. Sarah Fox, both of the City and County of San Francisco, State of California, and during the lifetime of the survivor of them and thereon to pay to said Alice G. B. Gartenlaub monthly from date hereof and during the lifetime of said Alice G. B. Gartenlaub seventy-five per cent of the entire net income, revenue and profit of every kind arising from said estate in said month in any way whatever, and if at the end of any one year it shall appear that said Alice G. B. Gartenlaub has not received an average of at least the sum of seven hundred and fifty ($750.00) dollars for each month of said year, or the portion of the year that said trust has been operative, then, and in that event, said trustee shall resort to the personal property of the *corpus* of said trust estate and thereout shall take sufficient to make up and pay over to said Alice G. B. Gartenlaub a sum sufficient to make the aggregate receipts of said Alice G. B. Gartenlaub the equivalent of seven hundred and fifty dollars ($750.00) for each month of said year, or portion of year that such trust has been operative, unless said Alice G. B. Gartenlaub shall in writing consent to waive the making up of said deficiency,

or shall consent to postpone payments on account thereof in whole or in part; and it is hereby expressly provided that said Alice G. B. Gartenlaub shall have no right to anticipate any payment or payments herein provided for, or to give, grant, sell, assign, or transfer or in any way or manner dispose of her rights, or any thereof, herein provided for, save only of course that after she receives monthly her share of the income or payments, as herein provided, she may then freely use and dispose of the same as her pleasure and wish may dictate.

"Fourth: The remaining twenty-five per cent of said net income, revenue and profit shall be paid by said trustee from time to time as received to Sarah Fox, or if she shall die before the death of said Alice G. B. Gartenlaub, leaving any child or children her surviving, or the issue of any deceased child, then to such child or children and the issue, if any, of any deceased child, such issue to take *per stirpes* and not *per capita.*

"Fifth: If said Alice G. B. Gartenlaub shall die before said Sarah Fox, then, and thereafter the whole of said net rents, income, revenue and profits of said trust estate shall then and thereafter be paid by said trustee to the use of said Sarah Fox, so long as she shall live: or if said Sarah Fox shall die before said Alice G. B. Gartenlaub, leaving a child or children her surviving or the issue, if any, of a deceased child then the said remaining twenty-five per cent of said net income, revenue and profit of said estate shall go to and shall by said trustee be paid over to such surviving child or children, said issue to take *per stirpes* and not *per capita.*

"Upon the death of the survivor of said Alice G. B. Gartenlaub and of said Sarah Fox, the trust and trusts hereby created shall wholly cease and determine and thereupon all of said property of every kind whatsoever shall pass to and vest in the children of said Sarah Fox, or to the survivor of them, if any, and to the issue, if any, of any or all of said children who may then be dead, said issue to take *per stirpes* and not *per capita.*"

The interpretation to be placed upon the foregoing provisions of the will of said decedent and upon the duties and responsibilities of the trustee thereunder was in certain of its phases before this court upon a former appeal (*Estate of Gartenlaub,* 185 Cal. 648 [16 A. L. R. 520, 198 Pac.

209]), wherein the question involved was as to whether premiums paid in the purchase of bonds by said trustee should be charged against the principal or *corpus* of said trust estate or against the revenue thereof derived from such investment of its funds. In order to determine that question this court was called upon to deduce and set forth the essential principle governing the administration of trusts of this character and hence governing this particular trust; and it did so in the following terms:

"A testator who creates a trust such as that in the instant case has two objects in view: First, the payment of the income arising from a fund to certain persons during lifetime; second, the transfer of that fund to certain individuals upon the death of the life tenants. The existence of a *corpus*, principal, or fund is an essential element of the trust and the *preservation* of this principal until the termination of the life estates is indispensable to the fulfillment of the testator's plans. Therefore, any depletion of the principal tends to frustrate the fundamental purpose of the trust and should be avoided and, where the price paid for a bond consists of more than the par value thereof, that method of accounting should be adopted which will prevent the impairment of the principal unless the testator has clearly directed to the contrary. Otherwise the life tenant, who is entitled to receive only income, will, in effect, have received a part of the principal."

Applying the foregoing principle to the question presented upon that appeal this court held it to be the duty of the trustee in cases where bonds had been purchased at a premium to withhold from the income derived from such an investment such an amount thereof as would be required to return to the principal the amount of the *corpus* thereof which had been expended in the payment of the premiums paid upon such purchases. The appellant herein, while apparently conceding the correctness of the foregoing principle as applied to purchases of bonds at a premium by the trustee, insists that the converse effect of its application is to be given to the purchase of bonds by the trustee at a discount. A moment's consideration will, however, show that the two situations are not such in either identity or in difference as to give room or reason for such converse application. In the case of premiums they are paid out by

the trustee from the *corpus* of the trust funds in the course of making an investment of such funds in securities which have the twofold desirability of being safe and of yielding a satisfactory return in the way of income; and it is, therefore, held in harmony with the aforesaid principle that the premium at which such securities were purchased should be amortized out of such income in order that the integrity of the *corpus* may be preserved. But in the case of purchases of securities at a discount, the amount of such discount remains in the hands of the trustee for the time being at least, in the form of uninvested *corpus* and does not become, as we shall show later, any part of the income or profits of the investment to which the life tenant is entitled under the terms of the trust. It does not, therefore, follow that since the life tenant in the application of said principle to premiums must yield up a portion of the income in order to maintain the integrity of the *corpus* he must, therefore, be entitled to the discounts which, if allowed him, would impair, for the time being at least, and perhaps imperil in the long run the *corpus* of the trust fund. The only possible or even plausible basis upon which the life beneficiary can rest the claim that she is entitled to receive the amount of unexpended *corpus* represented in the discount of any particular bond purchase consists in the assumption that the controlling reason why bonds, of equal safety with other bonds which command a selling price at par or at a premium, are upon the market at a discount and are purchased by trustees at such discount, is that such yield lower interest returns, and that this being so and such bonds being safe and hence certain of being eventually redeemed at par, the life tenant is entitled to have the amount of the discount at which such bonds have been purchased paid over to her in order to make up to her that amount of income which she would have received had the trustee invested that portion of the *corpus* in securities having a par valuation and hence yielding the larger income. In order to support this assumption the appellant urges that in the purchase of bonds trustees are governed by certain bond tables or interest known to the money market and wherein the value of bonds as a purchasable commodity is determined by the rate of interest which they carry. The appellant argues from this premise that since the *corpus* of the estate can suffer no

ultimate impairment from the investment in safe bonds at a discount she is entitled to such discount for the reason stated. The difficulty with the foregoing assumption and hence with the argument based thereon is that said assumption is not true in point of fact. The question as to what is the duty of the trustee in making investments of the *corpus* of the trust fund is a question of fact determinable by other conditions and considerations than those derivable merely from the study or comparison of bond and interest tables or than the state of the money and bond market as shown thereby. This is made clear in the instant case by the uncontradicted testimony of Mr. Greene, the trust officer of the respondent and admittedly an expert in both knowledge and experience in respect to those states of the bond and money market which relate to and determine the duties of trusteeships of this character. Mr. Greene testified as follows:

"In buying bonds for trust estate, my company does not ordinarily pay so much attention to the interest yield of the bond as to the safety of the investment. It is our duty to maintain the capital unimpaired as far as we can. Of course, I realize that it is the duty of a trustee to secure as high a return on the bonds purchased by it as is compatible with safety, in order that a life tenant entitled to the income of bonds may receive as large a return as a safe and conservative investment will permit. Therefore, as between two bonds which may be considered equally safe for investment purposes, I would prefer the one which yields the higher rate of return if it is a legal investment for trust funds under our Bank Act. The fact that safe bonds are selling at a discount at any time is due very largely to general financial conditions and to the fact that other bonds presumably as safe pay a higher rate of interest on their par value. Other considerations play a part in requiring the sale of a bond at a discount, such as the fact that the company issuing the bond is new, or not well known or established. It is true that in the case of a well known and well established company issuing bonds which are well secured and which constitute safe investments, the main factor which leads to the sale of the bonds at a discount is that the interest return from the bonds is lower than that which can be obtained from other investments presumed to be equally

safe.   It is true that bonds of the same issue and which are secured by the same security sometimes sell at different times at different prices.   Such bonds may sometimes sell at par, again above par and at other times below par.   The fluctuation in price of such bonds of the same issue and secured by the same security may be due to the relation which the interest rate of the bonds will bear at different times to the return which may be secured from other investments which are equally safe and numerous other causes and factors.   Undoubtedly, the safest bonds are State, County, Municipal and School District obligations.   The rates of interest which they bear are generally less than corporation bonds because of their safety and their income tax exemption.''

The effect of the foregoing evidence is to negative the assumption that the controlling factor in determining bond investments by trustees is that of the state of the market as shown by bond and interest tables, and to affirm the right of trustees to invest the *corpus* of their trust estates in bonds which may at the time of the investment be obtainable at a premium or at par or at a discount, regardless of the return in the way of interest or income which is provided for by their terms.   If this be true it follows that since the right of the life tenant is measured by the duty of the trustee, the full amount to which the former would be entitled in the way of ''income, revenue and profit arising from said *corpus*'' would be none other than the amount actually provided for as such income, revenue, and profit by the terms of the bond regardless of the price at which it had been acquired.   This conclusion becomes all the more inevitable when the legal meaning which has been given to the terms ''income, revenue and profit'' is ascertained.   These terms have been held in a uniform line of decisions as not to include increases from any cause in the value of the *corpus* of trust estates; as in Perry on Trusts, sixth edition, section 546, it is stated that ''any accretion to the fund itself as by the rise in value of securities goes to the remainderman.   The life tenant also derives advantage from this increased value through the larger *income* resulting; but if the securities mature or are sold the increased value belongs to the remainderman.''   In *Stewart* v. *Phelps,* 71 App. Div. 91 [75 N. Y. Supp. 526], the court holds that ''increase in the value of the trust estate by reason of the

increase in value of certain securities belonging thereto . . . belong to the *corpus* of the fund and should not be paid over to the life beneficiary *as income.*" In the *Matter of Gerry,* 103 N. Y. 445 [9 N. E. 235], it was held in respect to a trust fund created by will, by the terms of which the "annual interest, income and dividends" were to be payable to a life beneficiary, a surplus over the amount of the original fund resulting from the sale of securities in which the fund was invested was an accretion to the fund to which the remaindermen were entitled and was in no sense a *profit* upon the investment. In the case of *In re Cutler,* 23 Misc. Rep. 508 [52 N. Y. Supp. 842, 843], it was declared to be well settled that in investments and reinvestments of trust securities gains realized are capital, and not income, citing *In re Gerry, supra.* In the *Matter of Graham's Estate,* 198 Pa. 216 [47 Atl. 1108], it was held that where a trustee invests the moneys of the trust estate in bonds and subsequently sells the bonds at an advance and invests the proceeds in other securities, the profit on the bonds is part of the principal of the estate, and as between a life tenant and a remainderman is capital, and not income. In the *Matter of Vedder,* 2 Connolly's Reports (N. Y.) 548 [15 N. Y. Supp. 798], it was held that the increase from natural causes in the value of the property of a trust estate does not constitute "profits" and therefore does not go to a life tenant to whom are given the "income and profits of such estate during life; but such increase becomes principal and goes to the remainderman." In the case of *Duclos* v. *Benner,* 62 Hun, 428 [17 N. Y. Supp. 168], it was held that under a direction in a will to set apart and invest a certain sum and pay over "the income, interest, profits and earnings thereof" to the testator's widow semi-annually, where such sum is invested in government bonds which are subsequently sold at a profit, the widow is not entitled to such profit, but it belongs to the trust fund as a part thereof. In the early case of *Townsend* v. *United States Trust Co.,* 3 Redf. (N. Y.) 220, it was decided that under a trust created by a will which directed a specified sum to be invested in one of three named classes of bonds and "the interest, income or dividends" arising therefrom to be paid to the *cestui que trust* during his lifetime, the investment having been made in one of the forms specified

and the bonds so acquired thereafter sold at a profit, the *cestui que trust* was not entitled to receive such profits, but only interest upon the same. [1] This case has been quite generally cited and uniformly followed in later cases involving the same principle, and we think it may be taken to be settled law that accretions to a trust fund resulting from the increase in value of the bonds or other securities in which its *corpus* is invested, due to whatever cause, are to be regarded as part of the *corpus* of the trust and not as income or revenues or profits to which the life beneficiary is entitled. [2] This conclusion gains an added force from the consideration that whenever bonds are purchased by the trustee at a discount the amount of such discount remains in the hands of the trustee as an uninvested part of the *corpus* of the trust estate, and it is the duty of the trustee to make a timely investment of the same in other securities to the interest upon which as it accrues the life tenant would be entitled, and thus there would be made up to her approximately the amount of income which she would have received had the original investment been in bonds at par; and this is all to which, under the express terms of the trust, she would be entitled.

It may be apt at this point in the discussion to dwell upon the foregoing suggestion in its application to the terms of the particular trust involved in this inquiry. The appellant herein is given by the will of her deceased husband "seventy-five per cent of the entire net income, revenue and profit of every kind arising from said estate," payable monthly during her lifetime; and it is further provided therein that "if at the end of any one year it shall appear that said Alice G. B. Gartenlaub has not received an average of at least the sum of $750.00 for each month of said year, or the portion of the year that said trust has been operative, *then, and in that event* the said trustee shall resort to the personal liberty of the *corpus* of said trust and thereout shall take sufficient to make up" to said life tenant such deficiency. It thus appears that the only contingency upon the happening of which the trustee would be justified in paying over to the life tenant any portion of the *corpus* of the trust estate would be that above provided for; yet if the argument presented on behalf of the appellant is to be given effect, the trustee would be required to withdraw

from the *corpus* of said estate the uninvested portion thereof represented in the amount of the discount he has retained in making purchases of bonds at less than par, and pay the same over to the life tenant under the terms of the foregoing trust which require the monthly payment to her of the income, revenue, and profit arising from said estate. If it be contended by the appellant that she is not asking the present payment over to her of such discounts but only their accumulation for her benefit, the answer is twofold: First, that the right to have such discounts accumulated must rest upon her right to receive the same now or later as "income, revenue and profits" of said estate, which right, as we have seen, does not exist; second, there is no provision in the will of said decedent creating said trust which would empower the trustee to accumulate any portion of the trust properties in any other form than as a part of the *corpus* itself. It is not difficult to forecast the confusion which the application of the principle for which the appellant contends might create not only in the administration of this trust but generally in the administration of trust estates. Mr. Greene has testified to the fact that there are various conditions other than the rate of interest which determine the advisability of buying securities at less than par and which determine the disposition of such securities from time to time by the trustee. This is in accord with common knowledge as to the variable state of the bond and money market during the very years that the trustee in the instant case has been exercising the offices and duties of its trust. It is easy to conceive of instances during this period wherein trustees who have justifiably purchased certain securities at a discount might later find it equally advisable to dispose of such securities at the same price below par at which they had been purchased. But what if in the meantime some court upon the life tenant's insistence had directed the discount represented in the original purchase paid over to the life tenant? Or, it might well be during the changing conditions of the recent strenuous years securities deemed to be good investments at the offered discount might, without fault on the part of the trustee, become valueless. In such case would the *corpus* of the estate be held to suffer not only the loss incident to the unfortunate investment, but also the amount of the discount which its trustee had in the meantime been

required to pay over to the life tenant? Again, the assumption on the part of the appellant of her right to discounts based upon investments in the classes of safe securities contemplated by the creation of this trust is based upon the fixity of such investments until the maturity and redemption at par of the particular bond purchased at such discount; but such a limitation cannot in reason be imposed upon trustees since in the performance of their duty to invest, preserve, and increase the *corpus* of the trust they are empowered to purchase and sell securities and to invest and reinvest in the same, depending upon the state of a variable bond and money market and upon the variations in the value of securities caused thereby. This being so, to bind such trustees by the obligation to pay over, or even to accumulate discounts for the benefit of life beneficiaries, would be to create conditions constantly involving, if not imperiling the integrity of the *corpus* of the trust estate which it is their essential duty at all times to preserve intact; or, as in the case of the purchase of bonds at a premium, to restore as soon as is practicable out of income. It is the duty of courts in giving application to the essential principle governing the administration of trust estates announced in *Estate of Gartenlaub, supra,* to approve a rule of action which will tend to relieve the administration thereof in the hands of trustees from the confusion, difficulties, and possible involvement of the *corpus* of the estate as would arise out of the situations above outlined and others that might well arise out of the adoption of the proposition for which the appellant herein contends. We therefore deem it wiser to adhere to the doctrine enunciated by this court in its former decision and to render the same applicable to discounts as they were therein made to premiums, viz.: "The duty to restore to principal the total amount invested in bonds cannot be evaded upon the theory that the bonds may, as a result of fluctuations in market value be sold at higher prices than those for which they were purchased. . . . The fluctuations in market value after purchase by the trustee are merely changes in the value of the assets of the trust estate which are to be wholly disregarded in any accounting between life tenant and remainderman for funds from the trust estate invested in income-bearing property." The trial court having given such application of the principle in its order

settling the trustee's account from which this appeal is taken, it follows that its said order must be and the same is hereby affirmed.

Shenk, J., Lennon, J., Waste, C. J., Lawlor, J., Curtis, J., and Seawell, J., concurred.

Rehearing denied.