[S. F. No. 17220. In Bank. Nov. 5, 1947.]

Estate of CHARLES F. TRAUNG, Deceased. MAE PERCIVAL TRAUNG, Appellant, v. LOUIS TRAUNG et al., Respondents.

Hugh K. McKevitt and Jack M. Howard for Appellant.

Philip S. Ehrlich, Albert A. Axelrod and R. J. Hecht for Respondents.

EDMONDS, J.—The will of Charles F. Traung established a trust for the purpose of paying "the net income, revenue and profit" of specified property to Mae Percival Traung, his widow, for her life. The remaindermen are his two adopted children. The sale of shares of stock which were a part of the corpus of the trust occasioned the present controversy between the trustees and the life tenant. The trustees credited the proceeds of the sale to the corpus of the trust. Mrs. Traung's appeal is from an order settling their third account.

Among the property left in trust were 45,342 shares of Traung Investment Company. These represented approximately 20.16 per cent of the outstanding stock of that corporation. At the time of the testator's death, the Traung Company, as its only asset, owned 94 per cent of the capital stock of Mt. Tivy Winery, Incorporated. During the administration of the trust estate all of the stockholders of the Traung Company sold their stock to Joseph E. Seagram and Sons, Incorporated, and Carstairs Bros. Distilling Company, Incorporated. This sale was expressly conditioned upon the delivery to the purchasers of all of the issued and outstanding stock of the Traung Company, and the purchase price was based upon the excess in value of the assets over the liabilities of the Mt. Tivy Corporation.

The second account of the trustees showed the receipt of $74,440.28 on account of the sale, all of which was allotted to the corpus of the trust. The account was settled and approved without objection. The third account included the receipt of $17,750.51 as the final payment for the stock, and also credited it to corpus. The life tenant objected to the settlement of this account upon the ground that the amount represented earnings which had accrued after the death of the trustor and should be credited to income. Mrs. Traung's appeal is from an order settling the account.

Challenging this disposition of the money, the life tenant contends that the Traung Company was, in effect, liquidated through the medium of a sales agreement affecting all of the issued and outstanding capital stock. In such cases, she argues, the Pennsylvania rule, providing, as between the life tenant and the remainderman, for an equitable apportionment of corporate dividends declared from accumulated earnings and profits, should be applied. She also asserts that, although there is no controlling precedent in this state, California is committed to the Pennsylvania rule as to the apportionment of dividends based upon earnings. But regardless of this rule, says Mrs. Traung, the testator intended that she should have the earnings represented by the purchase price of the stock sold and the amount should be allotted to her as income of the trust.

The trustees, on the other hand, justify their allocation of the amount as a sale of corporate stock which, they maintain, is not equivalent to a liquidation. Under such circumstances, it is said, the life beneficiary is not entitled to any of the earnings of the corporation which are not distributed by the corporation to the shareholders.

Another point relied upon by the trustees is that, even if the life tenant is entitled to an apportionment of the profit of a sale of shares, in the present estate it has not been established that the Traung Company earned any net profits. The fact that the Mt. Tivy Corporation made a profit does not mean that the Traung Company had earnings which the trustees realized upon by the sale of the shares. The trustees also argue that the decree settling the trustees' second annual account, in which the proceeds of the sale were allocated to principal, is conclusive in favor of their action.

The contention that the Traung Company was, in effect, liquidated by the sale of its capital stock is not well taken. Carstairs and Seagram dissolved the corporation, but

that action does not affect the rights of the sellers. The contract of sale did not require nor contemplate the liquidation or dissolution of the corporation; the agreement provided for the sale of all of its capital stock, and not the transfer of the corporate assets. Furthermore, even the sale of all of the property of a corporation does not work a dissolution or liquidation of it. (*South Pasadena* v. *Pasadena Land etc. Co.*, 152 Cal. 579 [93 P. 490]; *Sullivan* v. *Triunfo M. Co.*, 39 Cal. 459.) "Liquidation of a corporation is defined as 'the operation of winding up its affairs by realizing its assets, paying its debts and appropriating the amount of profit or loss.' *W. E. Guild*, 19 B.T.A. 1186. It is in contemplation of law a strictly corporate act, not of any agent or officer who fortuitously executes its mechanics, but of the corporate entity itself, . . ." (*William C. Hay*, 2 T.C. 460, 470.)

A further distinction between a sale and a liquidation made in the Hay case, is that a sale is a bilateral act; the liquidation of a corporation is accomplished by means of unilateral action of the corporation. The fact that the trustees joined with all of the other stockholders in effecting the sale does not make the transaction a liquidation. After the sale was consummated, the Traung Company continued to be a corporation owning the corporate stock of its subsidiary.

With regard to stock dividends based upon earnings, there are three rules, each of which is known by the name of the jurisdiction in which it was first applied. Under the Pennsylvania rule, a determination is made as to whether the dividend or other distribution was declared from earnings which accrued before or after the trust began, and the dividend is apportioned between corpus and income accordingly. California has followed this rule in determining the ownership of extraordinary dividends. (*Estate of Gartenlaub*, 185 Cal. 375 [197 P. 90, 24 A.L.R. 1]; *Estate of Duffill*, 180 Cal. 748 [183 P. 337].)

In some jurisdictions, the Pennsylvania rule has been extended to the proceeds of a sale of securities. (*In re Nirdlinger's Estate*, 290 Pa. 457 [139 A. 200, 56 A.L.R. 1303]; *Simpson* v. *Millsaps*, 80 Miss. 239 [31 So. 912]; *In re Sherman Trust*, 190 Iowa 1385 [179 N.W. 109]; *Gist* v. *Craig*, 142 S.C. 407 [141 S.E. 26]; *Wallace* v. *Wallace*, 90 S.C. 61 [72 S.E. 553].) But by the weight of authority, in those jurisdictions which have followed the rule to determine the right to extraordinary dividends, the beneficiary does not share in the amount received by the trustee from the sale of

stocks or bonds constituting trust corpus. (*Long* v. *Rike* (C.C.A.), 50 F.2d 124; *Smith* v. *Hooper,* 95 Md. 16 [51 A. 844, 54 A. 95] ; *First National Bank of Canton* v. *Mulholland,* 123 Miss. 13 [85 So. 111, 13 A.L.R. 1000] ; *Guthrie's Trustee* v. *Akers,* 157 Ky. 649 [163 S.W. 1117] ; *Olcott* v. *Estate of Charles F. Hoffman,* 127 Misc. 399 [216 N.Y.S. 267] ; *McCoy* v. *McCloskey,* 94 N.J.Eq. 60 [117 A. 473] ; *Berger* v. *Burnett,* 97 N.J.Eq. 169 [127 A. 160] ; *Matter of Kernochan,* 104 N.Y. 618 [11 N.E. 149] ; other cases are collected in 153 A.L.R. 491; 81 A.L.R. 542; 56 A.L.R. 1315 and 13 A.L.R. 1004.)

█ It is generally conceded that gains in value of investments, including securities, belong to capital and are to be credited to the corpus of a trust fund, rather than to income. (*Estate of Gartenlaub,* 198 Cal. 204 [244 P. 348, 48 A.L.R. 677] ; *Estate of Eilert,* 131 Cal.App. 409 [21 P.2d 630] ; *Estate of Canfield,* 104 Cal.App. 181 [285 P. 363].) For example, in *Estate of Eilert, supra,* a corporation, in which the trust estate was a stockholder, sold all its assets, including improved real estate. It was held that, as between the life tenant and the remaindermen, the increase in the value of the corporate assets was an addition to the corpus of the trust estate.

The rule in regard to a sale of securities is stated in section 236 of the Restatement of the Law of Trusts as follows: ''Except as otherwise provided by the terms of the trust, if shares of stock of a corporation are held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary, . . . (e) the earnings of a corporation not distributed by the corporation during the designated period either as dividends or on partial or total liquidation of the corporation are not income; . . . .'' This rule is based upon sound reasoning. █ Although the corporate stock might have increased in value because of earnings accrued since the creation of the trust, the beneficiary does not become entitled to income or profits until a dividend has been declared and the amount separated from the capital of the corporation for distribution to its shareholders.

█ Professor Bogert, in his work on Trusts, condemns the apportionment rule as being impossible of application in the case of a sale of securities and states his objections to it as '' (1) the uncertainty of the causes for an increase in the market price of stock; (2) the vexation and expense caused to the trustee in disposing of gains on stock sales.'' (4 Bogert Trusts, § 824, pp. 2398-2399.) Mrs. Traung de-

clares that the difficulties of applying the apportionment rule generally should not be determinative of the question. Apportionment being the more equitable and just solution of the problem, should be followed, she argues, where, as in the present case, the profit can be ascertained, and the life tenant successfully carries the burden of proof as to the amount of the profit. But the use of that formula would require litigation in every case and a logical distinction may be made between its application to extraordinary dividends and the proceeds of a sale of securities. That distinction fully justifies the rejection in this state of the Pennsylvania rule insofar as such sales are concerned.

Since the enactment, in 1941, of the Uniform Principal and Interest Act (3 Deering's Gen. Laws, Act 8696; Stats. 1941, ch. 898, p. 2476), the proceeds of a sale such as is shown by the present record are deemed to be principal (§ 3[2]). The fact that neither irrevocable nor nonamendable trusts being administered at the time the statute became effective are expressly brought within its provisions, does not prevent the application of the same principle to such trusts, nor necessarily codify an existing rule governing them.

The parties agree that the intention of the testator, if it is ascertainable, is controlling. By his will, Traung provided that stock dividends and proceeds from the sale of stock rights ''shall be credited to principal and added to the trust estate and be held as a part thereof.'' From this requirement, it may not be inferred that the testator intended either that the rule of apportionment should or should not be applied in the case of a sale of the shares. Certainly it cannot be said that the will, on its face, specifically declares the intention of the trustor as to whether the proceeds here in controversy are to be regarded as corpus or allocated between corpus and income.

Moreover, the Pennsylvania rule would not aid Mrs. Traung, for the record shows conflicting evidence as to the amount of the net operating profits of the Mt. Tivy Corporation for the period of the trust. Under these circumstances, even if she were entitled to the benefit of the apportionment formula, she has not sustained the burden of proof which it requires.

The order settling the third account of the trustees is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.