[Civ. No. 4320.   Fourth Dist.   Nov. 1, 1951.]

Estate of EMMA C. HEARD, Deceased.   JOHN W. HEARD, JR., Respondent, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION et al., Appellants.

Warren K. Taylor and Calkins, Hall, Linforth and Conard for Appellants.

John W. Heard, Jr., in pro. per., for Respondent.

GRIFFIN, J.—Emma C. Heard, a widow, died on November 23, 1939, leaving an estate valued in excess of $200,000. Her only close relatives were a brother, to whom she bequeathed $5.00, and her son, John W. Heard, Jr., plaintiff and respondent in this proceeding. Under section IV of her will, admitted to probate on January 2, 1940, she bequeathed, in trust, the residue of her estate to appellant Bank of America National Trust and Savings Association, in its capacity as trustee (hereinafter referred to as trustee). This trust provided for a life income for the respondent in the sum of $200 a month, and provided for the payment of various other sums from said income to certain other named persons. The balance of the income was to go to respondent until the termination of the trust, and upon its termination the remaining trust estate was to vest in the issue of John W. Heard, Jr., if any, and if not, then in two named Masonic devisees and the University of California. (According to the briefs, there is now one issue of John W. Heard, Jr.)

After extended litigation in which the validity of the trust was upheld (*Estate of Heard,* 25 Cal.2d 322 [153 P.2d 553]) a final decree of distribution was entered on March 18, 1946. Among the assets of the estate, held in trust by the trustee, were 953 shares of common stock of the Bank of America National Trust and Savings Association (hereinafter referred to as the "bank") issued in its capacity as issuer of the stock. On February 8, 1949, the bank proposed a declaration of a 20 per cent stock dividend to its shareholders of record at the close of business on March 15, 1949, and on April 15, 1949, the trustee received from the bank a dividend consisting of 190-3/5 shares of common stock, based upon the 953 shares above mentioned. Upon receipt of this stock dividend the trustee allocated the dividend to the *corpus* of the trust under its claimed power given to it by section IV, paragraph (a) of decedent's will, which reads in part as follows:

"In accounting for the income and the principal of the trust estate, my said trustee shall not be required to amortize any premiums paid, nor to accumulate any discounts made upon any securities purchased for the use of the trust, and it shall at all times be the duty and power of my said Trustee

to determine what is income and what is principal of the Trust estate; provided, however, that should any sums be received by my said Trustee as bonuses, rentals, or royalties from any real property constituting a portion of the trust estate which may have been leased for oil and/or gas, as more particularly hereinafter provided, then, and in that event, such bonuses, rentals, or royalties and all of them shall be treated as income and not as principal.''

Upon the failure of the bank to allocate said stock dividend to income, this proceeding was initiated and on October 19, 1949, respondent filed herein his petition requesting the court below to instruct the trustee that such dividend constituted *income* of said estate and that its failure to so determine was not in accord with its best judgment or within the bounds of reasonable judgment or according to law, and that such failure constituted an abuse of discretion, and for an order directing the trustee to allocate such dividend to income.

After hearing the court found generally in favor of respondent, i.e., that the stock dividend of 190-3/5 shares constituted *income* of the trust estate; that the failure and refusal of the trustee to allocate said stock dividend to income of the trust estate constituted an abuse of discretion on the part of the trustee; that the trustee did not act according to its best judgment or within the bounds of reasonable judgment or according to law. Judgment was entered accordingly and the trustee was instructed to forthwith allocate the same to such income. From this order the trustee and the remainderman, Regents of the University of California (hereinafter referred to as "regents") appealed.

In support of the order respondents cites *Estate of Duffill,* 180 Cal. 748 [183 P. 337], wherein our Supreme Court, in discussing two methods of apportioning dividends which are in use in America, i.e., the "American or Pennsylvania rule" and the "Massachusetts rule," cited Cook in his work on Corporations, seventh edition, section 553, et seq. It is stated, as page 757:

"According to the American rule, if it be found that the fund out of which the dividend is paid accrued before the life estate arose, it is held to be principal belonging to the *corpus* of the estate. But when it is found that such fund was earned *after* the life estate arose, then it is income belonging to the life tenant. Of the other rule, known sometimes as 'the rule in Minot's Case,' which prevails in Massachusetts, Georgia, Rhode Island, and Illinois, the learned author says: 'It re-

gards cash dividends, whether large or small, as income, and stock dividends, whenever earned and however declared, as capital, and the rule, accordingly, is a simple one. Cash dividends belong to the tenant for life and stock dividends to the *corpus*. There is little doubt, however, that this rule works great hardship and injustice in many cases. Hence the rule is not rigidly adhered to, but the court, in deciding whether the distribution is a stock or a cash dividend, may consider the actual and substantial character of the transaction, and not its nominal character merely.' That we adopt the American or Pennsylvania rule is evident from the foregoing discussion and the cases cited.''

In *Estate of Traung*, 30 Cal.2d 811 [185 P.2d 801], the court said:

''With regard to stock dividends based upon earnings, there are three rules, each of which is known by the name of the jurisdiction in which it was first applied. Under the Pennsylvania rule, a determination is made as to whether the dividend or other distribution was declared from earnings which accrued before or after the trust began, and the dividend is apportioned between corpus and income accordingly. California has followed this rule in determining the ownership of extraordinary dividends.''

The Pennsylvania rule, however, was rejected, insofar as it applied to the *sale* of securities. The case held that gains in value of investments, including securities, belong to capital, and are to be credited to the corpus of a trust fund rather than to income, and that although the corporate stock may have increased in value because of earnings accrued since the creation of the trust, the beneficiary does not become entitled to income or profits until a dividend has been declared and the amount separated from the capital of the corporation for distribution to its shareholders. Apparently this rule was in effect in California at the time the testator in the instant case made her will, at the time of her death, and at the time of the creation of the trust.

Subsequently, our Legislature, in 1941 (Stats. 1941, ch. 898, p. 2476) passed an act which is referred to as the ''Principal and Income Act,'' concerning the ascertainment of principa' and income and the apportionment of receipts and expenses among tenants and remaindermen. Section 5, subdivision (1) thereof provides:

''All dividends on shares of a corporation forming a part

of the principal which are payable in shares of the corporation of the same kind and rank as the stock on which such dividend is paid, and dividends payable in shares of whatever kind or rank, *to the extent that they represent a capitalization of surplus not derived from earnings,* shall be deemed principal. Subject to the provisions of this section, all dividends payable otherwise than in such shares, including ordinary and extraordinary dividends and dividends payable in shares or other securities or obligations of corporations other than the declaring corporation, shall be deemed *income.* Where the trustee shall have the option of receiving a dividend either in cash or in the shares of the declaring corporation, it shall be considered as a cash dividend and deemed income, irrespective of the choice made by the trustee.'' (Italics ours.)

Appellants concede that this act was passed subsequent to the creation of the trust here involved, and would not necessarily be involved except to support the allowable discretion given the trustee by the trust agreement to determine what was principal and what was income and to allocate it accordingly.

Some documentary evidence was produced which consisted of a condensed statement of the bank over the period of years here involved showing the amount of capital, surplus, undivided profits, and reserve funds. The head trust officer of the bank was questioned as to what matters the trustee took into consideration in making its determination to allocate the stock to *corpus* instead of income. He testified they considered the several rules applied in the named states and believed that California followed the Pennsylvania rule, i.e., that any stock dividends paid from earnings accumulated after the creation of the trust should be considered as income; that they considered the provisions of the 1941 Principal and Income Act; that they believed that it did not apply to trusts created before its enactment; that they knew the accumulated surplus of the bank's earnings, since the death of the testator and the creation of the trust, had increased tremendously; that the policy of the bank in many cases was that if the amount of the cash dividends, plus the reasonable value of the stock dividends was about what the corporation would pay out in a normal year, about the reasonable proportion of the earnings, then they were inclined to allocate that stock dividend to income, but the market value of the 20 per cent stock dividend, plus the dividends paid out by the bank in cash in 1948, greatly exceeded the earnings of the bank in that year, and for that

reason they deemed it inappropriate to consider that dividend to be income. He then stated that they discussed the probable intent of the testator, and that in view of the fact that respondent was not ''in need'' and that he had received a considerable sum in the previous year, they did not believe that the testatrix would have wanted the trustee to have added the dividend of the 190-3/5 shares, amounting to about $9,000, to it; that they did not feel that they were bound by the Pennsylvania rule, but preferred to follow the Principal and Income Act, as interpreted by them, as well as the other factors stated, and determined to rely upon the discretionary power vested in the trustee by the will.

The evidence well demonstrates that the value of the 935 shares would not have been reduced by the declaration of the stock dividend here involved. The par value cost of the 20 per cent stock dividend involved was $21,329,275, or about $4,000,000 less than the 1948 earnings transferred to surplus. On March 15, 1949, the stock market reflected this dividend as being ''X-'' dividend, which stock had a par value bid price of 41. This would indicate that the market value of the stock held in trust was almost double the original value at the date of the testator's death. Upon this basis the market value of the 1,707,342 shares representing the 20 per cent stock dividend, was $69,901,022, or about one half of the bank's $135,000,000 surplus accumulated from the earnings for the period of 1939-1948.

In *Estate of Duffill, supra,* the court said:

''Except in a few of the states the determination of the directors of a corporation as to the source of its dividends has no binding or even persuasive effect upon the court when it is required to decide whether a stock dividend constitutes income which goes to the tenant for life or for years or is principal to be held for the benefit of the remainderman.'' And quoting from *McLouth* v. *Hunt,* 154 N.Y. 179, at 198 [48 N.E. 548, 553, 39 L.R.A. 230], the court says: '' 'The mere adoption by the corporation of a resolution cannot change accumulated earnings into capital, as between the life tenant and remainderman.' ''

The trial court's finding that the declared stock dividend here involved was income within the meaning of the law as it then existed is sufficiently supported. (*Estate of Gartenlaub,* 185 Cal. 375 [197 P. 90, 24 A.L.R. 1]; *In re Schnur's Estate,* (Cal.) 32 P.2d 970; 39 P.2d 402.)

The question then remaining is, notwithstanding the deter-

mination here made by the trustee, was the trial court authorized, to find that the trustee abused the discretion given it under the terms of the will, and whether or not it was a reasonable determination and in accordance with the intent of the testator. ■ When the will is entirely silent on what shall constitute corpus and what income, contains no provision as to how that question shall be determined, and merely directs that income be distributed in one manner and corpus in another, the question is determined in accordance with the rules of construction established by law. (*American Security & Trust Co.* v. *Frost,* (D.C.) 117 F.2d 283.) Many cases are cited holding that a trustee abuses its discretion if it exercises it in bad faith or goes beyond the bounds of reasonable judgment. (*Estate of Canfield,* 80 Cal.App.2d 443, 450 [181 P.2d 732].) This general proposition is subject to the exception that where *absolute* discretion has been conferred, any unsoundness in the trustee's judgment cannot be deemed to be an abuse of discretion. (*Neel* v. *Barnard,* 24 Cal.2d 406 [150 P.2d 177].) However, in *Estate of Canfield,* 80 Cal.App.2d 443, 450 [181 P.2d 732], it is said: "But the basic inquiry, whenever the exercise of a trustee's discretion, absolute or otherwise, is challenged, is always whether the trustee acted in the state of mind contemplated by the trustor." (Citing Restatement of the Law of Trusts, § 187.) The American Law Institute, in Restatement of the Law of Trusts, section 187, at page 485, states:

"If there is a standard by which the reasonableness of the trustee's judgment can be tested, the court will control the trustee in the exercise of a power where he acts beyond the bounds of a reasonable judgment, unless it is otherwise provided by the terms of the trust." And at page 488, under the heading: "*Interpretation of trust instrument as to extent of discretion,*" it is said:

"The extent of the discretion conferred upon the trustee depends primarily upon the manifestation of intention of the settlor. The language of the settlor is construed strictly so as to effectuate the purposes of the trust. The mere fact that the trustee is given discretion does not authorize him to act beyond the bounds of a reasonable judgment. The settlor may, however, manifest an intention that the trustee's judgment need not be exercised reasonably, even where there is a standard by which the reasonableness of the trustee's conduct can be judged. This may be indicated by a provision in the trust instrument that the trustee shall have 'absolute'

or 'unlimited' or 'uncontrolled' discretion. These words are not interpreted literally but are ordinarily construed as merely dispensing with the standard of reasonableness. In such a case the mere fact that the trustee has acted beyond the bounds of a reasonable judgment is not a sufficient ground for interposition by the court, so long as the trustee acts in a state of mind in which it was contemplated by the settlor that he would act. But the court will interfere if the trustee acts in a state of mind not contemplated by the settlor.''

In the light of this general rule we will examine the terms of the will and evidence produced to determine whether the evidence supports the finding that the determination of the trustee was unreasonable and that it abused its discretion in refusing to allocate the stock dividend to income, and in accordance with the state of mind contemplated by the settlor. In the will it shows that the mother, the testator, intended her son to receive *all* the income of the estate, except for the small portion otherwise indicated, whether it be small or large. She specifically provided that sums of money received as bonuses, rentals or royalties resulting from the trustee's execution of oil and gas leases should be treated as income and not as principal. We may rightfully assume that the testator knew, at the time of the creation of the trust, that her son, under the law, would be entitled to the stock dividend here in question as income. She further provided in her will that if, in the *"absolute and uncontrolled"* discretion of her trustee, the *income* should not be sufficient to provide for her son's reasonable needs, it could use any portion of the *principal*, including the whole thereof, if necessary. By its terms the trustee was authorized to invest and reinvest the corpus so that it would be ''income producing.'' ▉ An examination of the authorities cited by the respective parties convinces us that at the time of the making of the will, at the time of the death of the testator, and at the time of the creation of the trust, the Pennsylvania rule was recognized and in effect in this state, and it must be presumed that the person who drafted the intricate will, as well as the testator, must have had the law in mind as it prevailed at that time. The will should be interpreted accordingly. The intention of the testator should be controlling in this respect unless by the will a different intention is clearly expressed. It should be further noted that in other paragraphs of the will providing for the sale of property, etc., the testator used the phrase ''absolute discretion,'' and ''absolute and uncontrolled'' dis-

cretion, but when she came to this particular paragraph the term "absolute discretion," or "absolute and uncontrolled" discretion was not used, but she used only the term "duty and power" to determine what was income. Section 2269 of the Civil Code provides:

"A discretionary power conferred upon a trustee is presumed not to be left to his arbitrary discretion, but may be controlled by the proper court if not reasonably exercised, unless an *absolute discretion* is clearly conferred by the declaration of trust." (Italics ours.)

Counsel for respondent well points out that if the trustee is permitted to determine what is income and what is corpus of the estate, without restriction or control of the court, it could easily declare all income, from whatever source, except the possible income from bonuses, rents or oil royalties, a part of the corpus, and thus defeat all bequests made from the income of the trust, which would be contrary to the expressed desire of the testator. No doubt such actions would be, under those circumstances, subject to review by the court in determining the reasonableness of the trustee's action, even though the trustee may have claimed that it acted in good faith and under the terms of the will.

Appellant trustee argues that since the court found that it acted in good faith, the only question for the court to determine is "Whether the trustee acted beyond the bounds of a reasonable judgment." It concedes that the trustee "should, if possible, ascertain the probable intention of the settlor" as gleaned from the instrument. A somewhat similar question was presented to this court in *Estate of Greenleaf*, 101 Cal. App.2d 658 [225 P.2d 945] (Hearing denied by the Supreme Court). Many of the contentions made by appellants here were there presented and discussed. There it was contended by the trustee that there was no evidence or finding by the trial court that the trustee acted in bad faith or abused its discretion, or that its decision was unreasonable, and that to support the action of the trial court a finding would have to be made against the trustee on those issues; also, that the trial court erred in substituting its own judgment for that of the trustee. We there held the general rule to be that if the power of the trustee is discretionary, and the trustee is fairly employing his judgment to advance or not to advance, the court will not control his action merely because it disagrees with him, but it must find some abuse of discretion or bad faith before it will interfere. We concluded, however, that

since the declaration of trust did not give the trustee *sole or absolute discretion* to determine the amount to be paid the life beneficiary, the court was authorized to examine the provisions of the entire will and determine whether the trustee had abused its discretion and had not complied with the intention of the testator, as expressed in the will.

Some light may be shed upon the question whether the trustee acted beyond the bounds of a reasonable judgment, or whether it abused its discretion in not declaring this particular issue of stock income, by a recitation of an item of accounting of the trustee in respect to a certain somewhat similar stock dividend received from the Standard Oil Company of California, which item was referred to in the briefs. It appears that the Standard Oil Company declared a somewhat similar stock dividend under somewhat similar circumstances and the trustee willingly allocated that stock to plaintiff as income.

From all of the foregoing and from the language of the will, it seems clear to us that the trustee did not have an uncontrolled discretion to do as it pleased in determining what was principal and what was income of the trust estate; that such discretion must be exercised reasonably, in accord with the intent of the testator, and in accordance with sound judgment and the law. The finding that the trustee did not act according to its best judgment, within the bounds of reasonable judgment, or according to law, and that its failure and refusal to allocate said stock dividend to income of the trust estate constituted an abuse of discretion has sufficient evidentiary support. (*In re Talbot's Will,* 170 Misc. 138 [9 N.Y.S.2d 806] ; *American Security & Trust Co.* v. *Frost, supra; Estate of Jacks,* 80 Cal.App.2d 562 [182 P.2d 605].)

Decree affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied November 26, 1951, and appellants' petition for a hearing by the Supreme Court was denied December 20, 1951.