[Civ. No. 19601. First Dist., Div. One. Dec. 1, 1961.]

Estate of GEORGE WILLIAM STARR, Deceased. CROCKER-ANGLO NATIONAL BANK, as Trustee, etc., Petitioner and Appellant, v. EDGAR H. ROWE, as Guardian *ad Litem,* etc., et al., Objectors and Respondents.

Young, Rabinowitz & Chouteau and H. S. Young for Petitioner and Appellant.

Eugene H. O'Donnell, in pro. per., Bronson, Bronson & McKinnon and Nicholas, Kolliner & Van Tassel for Objectors and Respondents.

BRAY, P. J.—Appellant, trustee under the trusts created by the will of George William Starr, deceased, appeals from an order instructing said trustee, and from that portion of an order approving the eighth account and report of said trustee which disapproves of the trustee's action in treating certain stock dividends as income and orders the trustee to allocate to principal such stock dividends (or their market value, if sold).

## Question Presented

Does the clause of the will dealing with distribution of "all increase in value of corpus" clearly indicate the intent of the testator, or is the distribution of the stock split or dividend to be determined by the "Pennsylvania" or "Massachusetts" rule?

## Record

In 1944 the will of George William Starr was admitted to probate. The will created residuary trusts, "Trust A" for the benefit of his wife for life, "Trust B" for the benefit of his daughter for life and "Trust C" for the benefit of his grandchildren for life with remainder to his great-grandchildren. Trust A provides that 80 per cent of income should be paid monthly to his wife, in no event less than $500, and in the event less than $500 per month is available the balance is to come from the rest of the net income and corpus. Trust B provides the same terms for the daughter. Both trusts provide that upon the death of the first to die of the wife and daughter, the share held by that decedent should be added to the corpus established for the survivor. (The wife died recently.) After death of the survivor of the wife and daughter and after payment of a specific bequest, Trust C takes effect.

In Trusts A and B, but not in Trust C, there is a clause 2 "Except as otherwise required by law, *all increase in value of corpus from whatever cause arising* and all profits resulting from the sale of any part of said trust property *shall be and constitute principal or corpus of said trust estate.*" It is the italicized portion of the clause with which we are concerned. It is conceded, also, that "otherwise required by law" is not applicable to our problem.

Pursuant to its investment powers the trustee bought for each of Trusts A and B 100 shares of stock in American Home

Products Corporation, an additional 10 shares for each in December 1944, and an additional 15 shares for each in August 1946. In November 1946, the corporation issued three shares of its stock for every one held, making 375 shares held in each of Trusts A and B, and the trustee allocated these additional shares to corpus rather than income. This allocation was thereafter approved by the probate court. In April 1951, the trustee exercised stock subscription rights and purchased 25 additional shares.

In a distribution taking effect November 14, 1957, the corporation issued two shares for one, thereby giving each of the two trusts 400 additional shares. There was no change in par value of the shares. The corporation labeled the distribution a "stock split . . . [designed to] . . . encourage a wider public participation . . . [with] . . . no change in the relative rights or interests of present stockholders." The distribution was accompanied by a transfer, representing the aggregate par value of the new shares, from capital surplus to capital account. Reasoning that this distribution was really a distribution of earnings and therefore a "stock dividend," the trustee interpreted clause 2 as not covering stock dividends and determined that the 400 shares should be allocated between the income and principal under the "Pennsylvania Rule." Under this rule, stock dividends paid out of earnings accumulated during the life tenancy are allocated to income but only so far as the original "intact" value of the stock is not impaired. The trustee considered 396 out of the 400 shares to be income, this representing the extent to which the intact value of the original stock after the dividend exceeded the intact value at the time of the purchase of the stock. The intact value was determined by dividing the number of shares into the book value of the corporation. (The book value equalled stated capital plus surplus.)

Before proceeding to effect the allocation the trustee petitioned the probate court for instructions. One of the great-grandchildren remaindermen filed objections. The probate court found that the distribution was the result of a stock dividend, but that clause 2 shows that "the decedent intended that all increase in the value of the corpus should constitute the principal of the trust estate and that said Trustee's receipt of shares by such stock dividends increased the value of corpus of the trust estate." The court then ordered that the trustee treat said stock as principal in both Trust A and Trust B and allocate no portion thereof as income.

## Clause 2 Is Clear

 All parties devote considerable portions of their briefs to the question of whether the issue of the 400 shares of stock to each trust estate is a stock split, as stated by the corporation, or a stock dividend as found by the court, and to the question of whether the rule in California is that such stock should be allocated under the Pennsylvania rule which would require its allocation almost entirely to income, or under the "Massachusetts" rule which would require its allocation to principal. In view of the trial court's interpretation of clause 2, and ours,[1] that whether the issue be a stock split or a stock dividend it constituted an increase in the value of the corpus, and that the testator intended "all increase in the value of corpus from whatsoever cause arising" to constitute principal, such questions are immaterial. In the absence of a direction by the testator, the question of whether the Pennsylvania or the Massachusetts rule would apply would be important. However, we have such direction here.[2]

The stock distribution was a paper transaction whereby the sum of $3,896,035 was charged by the corporation to "Capital Surplus" and the same amount was credited to "Capital Stock." In *Estate of Traung* (1947) 30 Cal.2d 811, 815 [185 P.2d 801], the court quoted from section 236 of the Restatement of the Law of Trusts, ". . . the earnings of a corporation not distributed by the corporation during the designated period either as dividends or on partial or total liquidation of the corporation are not income," and then said, "Although the corporate stock may have increased in value because of earnings accrued since the creation of the trust, the beneficiary does not become entitled to income or profits until a dividend has been declared and the amount separated from the capital of the corporation for distribution to its shareholders." In our case no amount was separated from the capital of the corporation for distribution to its shareholders.

 It is well settled that the intent of the testator governs whether a corporate distribution is to be allocated to principal or to income, and that this intent overcomes presumptions.

---

[1]As no extrinsic evidence to interpret clause 2 was offered and the interpretation is derived solely from the terms of the will, this court is not bound by the trial court's interpretation. (See 3 Witkin California Procedure, § 89, p. 2253.) However, as will appear herein, we agree with that interpretation.

[2]For the same reason, it is unnecessary to consider the effect of *Estate of Duffill* (1919) 180 Cal. 748 [183 P. 337], on the corporation's declaration that the stock issue was a stock split.

586

(See *Estate of Schramm,* 115 Cal.App.2d 55, 59 [251 P.2d 418].) █ "The will and entire scheme of disposition should be viewed as a whole." (*Idem,* p. 57.) █ It appears from the will that the testator was anxious for the welfare of his grandchildren (who are given a life estate) and his great-grandchildren, apparently considering that the wife and daughter were well provided for. At the end of his will he declares, "In my opinion the income of the said trust funds hereinabove . . . provided to be paid to my . . . wife and . . . daughter, will be considerably in excess of their requirements. I therefore earnestly request and urge that they and each of them voluntarily deposit with the trustee . . . such part of the income which they may receive and which they shall not need. . . ." Again, if the wife or daughter fails to make "ample provision for the care, maintenance, support and education of decedent's grandchildren" the trustee in his discretion is empowered to deduct for this purpose from the wife's and daughter's share of the income. Taking the will as a whole *it appears that the overall purpose of the testator is to emphasize corpus at the expense of income.*

Orders affirmed.

Tobriner, J., and Sullivan, J., concurred.