This litigation arose by way of a petition for distribution to the remaindermen of the assets of a testamentary trust upon the death of the income beneficiary. The pleadings constitute an accounting, report and petition filed by the trustees (who are also the remaindermen) and objections thereto filed by the widow and executrix of the estate of the income beneficiary. *Page 551 
Lottie Page died testate in 1938, leaving four children as her sole heirs. In August of 1940 the estate was distributed pursuant to a Decree of Distribution which was based on Lottie's holographic will. Pursuant to the Decree each of three children, Lottie Ray, Mary Simonsen and Albert Johnson, were given an undivided one-fourth interest in the entire estate. The remaining undivided one-fourth interest was distributed to the same three children as trustees, with the income attributable to that interest to be paid to John Johnson for his life. On John's death the trust estate was to be distributed to the trustees as remaindermen.
The estate, insofar as is here pertinent, consisted in part of completely unproductive desert land, together with some income properties. The income properties and some of the desert properties were never sold. A number of the desert properties were sold in 1957 and 1958. None of the desert properties ever became productive of income. All of the properties appreciated substantially in value. By her objections to the accounting, John Johnson's executrix, whom we shall call "contestant," seeks two things: A portion of the appreciated value of the properties in the estate as "delayed income"; and a surcharge upon the trustees for an alleged breach of trust in not making productive the portion of the estate which produced no income and in not making more productive the remaining portion.
By its judgment the trial court awarded contestant a portion of the appreciated value of the desert properties (both those which were sold and those retained), held that she was not entitled to any of the appreciated value of the income properties, and refused to surcharge the trustees. Both sides, being unsatisfied with the judgment, have appealed.
At this point it would seem appropriate to set forth in its entirety Civil Code section 730.13 of the Principal and Income Law, originally enacted in 1941, on which the judgment is based.
"(1) Where any part of a principal in the possession of a trustee consists of realty or personalty which for more than a year and until disposed of as hereinafter stated has not produced an average net income of at least 1 per centum per annum of its inventory value as fixed by the appraiser or appraisers regularly appointed by the court, or in default thereof its market value at the time the principal was established or of its cost where purchased or otherwise acquired later, and the trustee is under a duty to change the form of *Page 552 
the investment as soon as a reasonable price, not representing an undue sacrifice of value, may be obtained and such change is delayed, but is made before the principal is finally distributed, then the tenant shall be entitled to share in the net proceeds received from the property as delayed income to the extent hereinafter stated.
"(2) Such income shall be the difference between the net proceeds received from the property and the amount which, had it been placed at simple interest at the rate of 5 per centum per annum for the period during which the change was delayed, would have produced the net proceeds at the time of change, but in no event shall such income be more than the amount by which the net proceeds exceed the inventory value of the property as fixed by the appraiser or appraisers regularly appointed by the court, or in default thereof its market value at the time the principal was established or its cost where purchased later. The net proceeds shall consist of the gross proceeds received from the property less any expenses incurred in disposing of it and less all carrying charges which have been paid out of principal during the period while it has been unproductive.
"(3) The change shall be taken to have been delayed from the time when the duty to make it first arose, which shall be presumed in the absence of evidence to the contrary, to be one year after the trustee first received the property if then unproductive, otherwise one year after it became unproductive.
"(4) If the tenant has received any income from the property or has had any beneficial use thereof during the period while the change has been delayed, his share of the delayed income shall be reduced by the amount of such income received or the value of the use had.
"(5) As between successive tenants, or a tenant and a remainderman, delayed income shall be apportioned in the same manner as provided for income by Section 730.06."
It will be noticed that 1 percent is the stated test of productivity for the purpose of apportionment. The trial court found that the desert properties which were sold were unproductive and that the trustees were under a duty to sell them within a year, and "imprudently neglected [to sell them] within a reasonable time." The same was found as to the unsold desert properties, and delayed income was computed, the record reveals, according to the formula in section 730.13, subdivision (2). Concerning the income properties in question, it was *Page 553 
found "That the net income from the trust's interest in inventory items #1 and #3 did not at any time fall below one percent per annum of the appraised value of said interest." This finding is not challenged and it of course takes the income properties out of the operation of section 730.13 In its conclusions of law the trial court sets forth certain amounts as "delayed income apportionable to John Johnson" from the desert properties. Concerning the income properties, the trial court concluded "That inasmuch as the net income from inventory items #1 and #3 did not at any time fall below one percent per annum, the trustees are deemed to have acted as prudent men in the management of the trust's interest in said inventory items."
Contestant challenges the judgment in two ways. She claims that certain allegations of fraud on the part of the trustees were improperly stricken, and that if she were allowed to prove these allegations she would be entitled to a surcharge equal to all the appreciated value of the estate. She further contends that although the 1 percent figure is the dividing line between productive and unproductive property for purposes of section 730.13, the fact that 1 percent was earned on the income properties does not mean that as a matter of law the trustees met their trust responsibility to the income beneficiary with respect to those properties. The trustees' appeal is based on claims that the evidence is insufficient to establish a duty or the amount of the judgment; that the trial court erred in failing to find on the question of estoppel and various other matters; and that there were certain evidentiary errors.
[1] The contention of the trustees that is dispositive of this appeal is that section 730.13 does not apply to this trust. The decree of distribution establishing the trust became effective in August of 1940. Section 730.02 of the Principal and Income Law reads in part: "This chapter [of which § 730.13 is a part] shall apply to all transactions by which a principal shall be established which become legally effective on or after September 13, 1941. It shall also apply to all revocable trusts existing on and prior to that date and to all other trusts to the extent to which they may be at that time or any later time amendable by the settlor in respect to matters covered by this chapter. . . ." This section was apparently included to protect the constitutionality of the law. (See Annot. 69 A.L.R.2d 1137.) It clearly does not embrace the instant trust within its *Page 554 
terms. (See Estate of Traung, 30 Cal.2d 811 [185 P.2d 801];Estate of Heard, 107 Cal.App.2d 225, 229 [236 P.2d 810, 27 A.L.R.2d 1313].)
This is not to say that the principle of apportionment does not exist in this State independent of statute. Estate of Bothwell,65 Cal.App.2d 598 [151 P.2d 298, 868], was the first appellate decision in California to consider the question. It adopted the Restatement rule. Section 241 of the Restatement of Trusts reads:
"(1) Unless it is otherwise provided by the terms of the trust, if property held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary is property which the trustee is under a duty to sell, and which produces no income or an income substantially less than the current rate of return on trust investments, or which is wasting property or produces an income substantially more than the current rate of return on trust investments, and the trustee does not immediately sell the property, the trustee should make an apportionment of the proceeds of the sale when made, as stated in Subsection (2).
"(2) The net proceeds received from the sale of the property are apportioned by ascertaining the sum which with simple interest thereon at the current rate of return on trust investments from the day when the duty to sell arose to the day of the sale would equal the net proceeds; and the sum so ascertained is to be treated as principal, and the residue of the net proceeds as income.
"(3) The net proceeds are determined by adding to the net sale price the net income received or deducting therefrom the net loss incurred in carrying the property prior to the sale."
It will be noted that there are several important differences between section 730.13 and the Restatement rule. The "one percent" rule of section 730.13 becomes "no income or income substantially less than the current rate of return on trust investments" in the Restatement. Section 730.13 uses 5 per cent in calculating the amount to be apportioned to income, whereas the Restatement uses "the current rate of return on trust investments." There are many other differences which should receive judicial comment only when interpretation is necessary in the resolution of a cause. It is sufficient here to say that the differences are such as to alter substantially the complexion of the litigation. It is impossible to ascertain what the trial court would have done had it applied Estate *Page 555 of Bothwell, supra, and section 241 of the Restatement instead of section 730.13
Estate of Traung, 30 Cal.2d 811 [185 P.2d 801], is of no assistance to contestant in this respect. It merely holds that the fact that trusts such as the one at bar are not brought within the terms of section 730.02 does not prevent the application of the principle embodied in the Principal and Income Law if that principle is also established by common law. It was there held that the income beneficiary does not become entitled to the income of corporations whose stock is held by the trust unless dividends are declared. There were no differences between the statutory and the common-law rule.
Since the other matters giving rise to alleged error are less than likely to occur on a new trial, it would not be appropriate to discuss them here.
Because of the unusual circumstances of this case, each side will bear its own costs on appeal.
The judgment is reversed.
Ashburn, J., and Herndon, J., concurred.
A petition for a rehearing was denied February 26, 1962, and the petition of the objector and appellant for a hearing by the Supreme Court was denied March 28, 1962. Traynor, J., was of the opinion that the petition should be granted.