## COMMISSIONER OF INTERNAL REVENUE v. SMITH.

### No. 95.

Circuit Court of Appeals, Second Circuit.

June 9, 1943.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Samuel H. Levy, and Carolyn E. Agger, Sp. Assts. to the Atty. Gen., for petitioner, Commissioner of Internal Revenue.

David Sher, of New York City (Kevin McInerney, of Rochester, N. Y., of counsel), for respondent, John Thomas Smith.

Before SWAN, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

## AUGUSTUS N. HAND, Circuit Judge.

The first question before us is whether dividends of the Chrysler Corporation to the amount of $92,667, paid in the year 1929, and dividends of the Chrysler Corporation to the amount of $82,740, and of the Hudson Motor Car Company to the amount of $6,175, paid in the year 1930, should be assessed as income of the taxpayer, John Thomas Smith, rather than as income of Innisfail Corporation, of which he was the sole stockholder.

Innisfail was a New Jersey corporation owned and controlled by the taxpayer. The Tax Court made a finding that the "purpose of the petitioner in organizing Innisfail was to have it hold securities, to avoid duplication of taxation under state inheritance tax laws in case of his death, and to gain the advantage of paying income taxes at the corporation rates." That tax avoidance was the only purpose is amply borne out by the evidence.

In 1926 Innisfail acquired from the taxpayer 5,005 shares of Chrysler preferred stock, and a conversion option, in exchange for the issue of its own stock. To facilitate the acquisition, the taxpayer, on June 14, 1926, executed a bill of sale to the corporation, covering both the preferred stock and the option. Innisfail soon afterwards exercised the option and thus became entitled to 26,477 shares of Chrysler common stock. This stock was registered in the name of the taxpayer and, because of this, all dividends on the Chrysler stock were thereafter paid directly to him, though credited on his books to Innisfail. The Tax Court found that his "object in retaining the record title in his own name was to afford greater facility in transferring the certificates, which covered a listed stock, than would be possible if the certificates were recorded in a corporate name." There was a capital gain of $516,410.13, realized through the exchange of the Chrysler preferred for the common stock in 1926. Innisfail returned and paid income taxes on this profit and the Commissioner accepted the return as correct.

As the result of cash advances and transfers of property to Innisfail by the taxpayer the former had become indebted to him at the beginning of 1929 in the amount of $312,666.51. The taxpayer credited to Innisfail, in reduction of the above indebtedness, Chrysler dividends which he had received during the year 1929, amounting to $92,667. The advantage of treating the stock as vested in Innisfail was a saving of taxes on the dividends, because dividends were then subject to substantial surtaxes if assessable against an individual taxpayer, but were exempt from tax if belonging to a corporation. Revenue Act 1928, § 23(p), 26 U.S.C.A. Int.Rev.Acts, page 359.

In 1928 the taxpayer subscribed for 4,412 additional shares of Chrysler common stock and paid for them from his personal funds. Though this stock, like the other Chrysler shares, was registered in Smith's own name, he charged the amount he had paid for it against Innisfail on his books. On December 6, 1929, Innisfail executed a bill of sale of these 4,412 shares to the taxpayer at a book loss of $139,571.25 as against the original purchase price. This loss was deducted by Innisfail in its 1929 income tax return. The result was a substantial tax saving, though there was never any change in the beneficial ownership of the shares. The dividends on this stock in the year 1930 were deposited in Smith's own bank account and were returned by him as income.

On September 30, 1930, Innisfail gave a bill of sale to the taxpayer for 10,000 of the 26,477 shares of Chrysler common stock at the price of $195,000. This transaction represented a book loss of $123,600, which was deducted by Innisfail on its 1930 income tax return. During that year he received dividends amounting to $82,740 on the Chrysler stock which he had sold to Innisfail, and also received dividends amounting to $6,175 on 1,900 shares of Hudson Motor Car stock standing in his name which he had also sold to Innisfail. He purported to sell these 1,900 Hudson Motor Car Company shares to Innisfail by bill of sale of December 29, 1929, at the price of $106,400, the transaction to be completed by charging Innisfail with that amount on the taxpayer's books and by similarly crediting the taxpayer on Innisfail's books. This supposed sale involved no transfer of cash but mere book entries which resulted in a book loss to the taxpayer of $48,811.

The certificates for the shares of Chrysler and Hudson Motor Car stock which the taxpayer purported to sell to Innisfail remained in his own name and within his possession and control at all times.

Because of the decision of Higgins v. Smith, 308 U.S. 473, the Tax Court refused to allow the deductions of $48,811 which the taxpayer took in 1929 for his loss resulting from his sale of Hudson Motor stock to Innisfail in 1929, and also refused to allow the deduction of $39,240 which he took in the same year for his loss that we have not heretofore mentioned resulting from his sale of 1,000 shares of Adeberan stock to Innisfail. The reason for the disallowance of each item was that the transactions were between the taxpayer and a corporation which he wholly owned and controlled. Cf. Moline Properties, Inc., v. Com'r, 319 U.S. ——, 63 S.Ct. 1132, 87 L. Ed. ——.

Notwithstanding the refusal to allow deduction of losses arising from sales by Smith to Innisfail, the Tax Court made the finding that he "intended to pass full and absolute ownership" of the Chrysler stock to Innisfail when he transferred his rights therein on June 14, 1926, and in accordance with this theory treated his contracts to sell the additional shares of Chrysler and the shares of Hudson Motor Car to Innisfail as passing title to the latter and the dividends on them as belonging to it, though the certificates stood in the name of the taxpayer. As a result of this deci-

sion the dividends which would have been subject to taxation if they had been treated as part of Smith's individual income were relieved of taxation both as against him and against Innisfail.

The Commissioner has appealed from the foregoing decision of the Tax Court on the ground that dividends paid by Chrysler in 1929, aggregating $92,667, and by Chrysler and Hudson Motor Car Company in 1930, aggregating $88,915, should be reckoned for tax purposes as income of the individual. We think that the contention of the Commissioner is well founded and that the orders of the Tax Court which adjudged tax deficiencies for the years 1929 and 1930, without including these dividends in the taxpayer's income, erroneous.

There was no substantial business advantage except saving of taxes to be derived through the organization of Innisfail in 1926, or through its subsequent operation. The taxpayer testified that he thought it to his interest to organize Innisfail and to turn over the Chrysler stock and option to it. He organized it with the immediate purpose of exercising the option to convert the Chrysler preferred stock into common. The conversion resulted in a profit to Innisfail of $516,410.13. Smith testified that in buying and selling securities he always took tax consequences into consideration, that it was desirable to have a corporation available to deal in stocks, because taxes on profits realized by an individual stockholder were likely to be heavier than those payable by a corporation. He retained as much practical control over the corporate assets of Innisfail as though they were his own. The directors, other than himself, were his friends and he was both the president of the company and its sole stockholder. He kept its securities with his own and his wife's in his safe deposit boxes. No notes were issued for advances made by himself or Innisfail to one another and no interest was charged by either on balances. He could and did operate Innisfail to his great advantage in respect to saving of taxes.

It seems unnecessary to say whether the income of a corporation that is wholly owned by a single stockholder should invariably be taxed as his own. There would be difficulty in adopting such a universal rule when Congress has thought it necessary or proper to establish an elaborate plan for taxing personal holding companies. Cf. Revenue Act of 1938, Title IA,

§ 401 et seq., 26 U.S.C.A. Int.Rev.Acts, page 1129 et seq. It is true that there is some language in Higgins v. Smith, 308 U. S. 473, 60 S.Ct. 355, 84 L.Ed. 406, and Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, which may indicate that the income of a company that is owned by a single stockholder may, if the Commissioner thinks best, be assessed against him rather than the corporation. But in the case at bar we need go no farther than to say that there was no substantial business reason for the creation or continued existence of Innisfail since its only, or at least, its main object was to furnish the owner of all its stock with a means of diminishing his taxes. It not only conducted no business enterprise but had no justification for existence even as a holding company. It ordinarily left its securities in Smith's name and possession, and most of its dealings with him merely took the form of book entries. We think it clear that the person beneficially entitled to the dividends cannot escape taxation by means of the intervention of a corporation which is a mere personal agency and shows so little justification for existence as Innisfail. The situation resembles that in Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355, where the formal steps required by the statute to effect a reorganization were carried out but there was no business justification for the procedure except the saving of taxes. Such a legal formality was held an insufficient shield against the "fiery darts" of the tax collector.

In Higgins v. Smith, 308 U.S. 473, 60 S. Ct. 355, 84 L.Ed. 406, this very taxpayer was denied the right to deduct a loss arising from a sale of securities to Innisfail in the year 1932. Justice Reed said at page 476 of 308 U.S., at page 357 of 60 S.Ct., 84 L.Ed. 406:

"Title, we shall assume, passed to Innisfail but the taxpayer retained the control. Through the corporate forms he might manipulate as he chose the exercise of shareholder's rights in the various corporations, issuers of the securities, and command the disposition of the securities themselves. There is not enough of substance in such a sale finally to determine a loss."

In Brown v. Commissioner, 2 Cir., 115 F. 2d 337, we recently held that a fee for legal services, which had been assigned to a corporation wholly owned and controlled by the assignor, was taxable against the latter and we there rejected the contention that the scope of Higgins v. Smith was limited to situations where the taxpayer claimed a credit for a loss upon a sale to his wholly owned corporation.

The taxpayer argues that the Chrysler and Hudson Motor dividends cannot be treated as part of his income because of the findings of the Tax Court to the contrary and the conclusive effect of such findings under the decision of Helvering v. Clifford, 309 U.S. 331, 336, 60 S.Ct. 554, 84 L.Ed. 788. But we are not persuaded that the Tax Court gave due weight to the later decision of the Supreme Court in Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L. Ed. 406, and to the clearly unsubstantial character of the taxpayer's wholly owned corporation. The attempted differentiation between losses that cannot be deducted and dividends which need not be included in a taxpayer's income seems to us illusory where the corporation involved is not a business organization but a mere vehicle for tax avoidance.

■■■ In view of the decisions of Higgins v. Smith and Brown v. Commissioner, supra, the Commissioner is entitled to consolidate the income of the taxpayer with that of Innisfail for the years in question. Such a consolidation will involve not only the income of both, but all their properly deductible expenses and losses. While the Commissioner need not acquiesce in the form the taxpayer chooses, Higgins v. Smith, supra, 308 U.S. at 477, 60 S.Ct. 355, 84 L.Ed. 406, we do not suppose that the statement of Justice Reed to this effect was intended to authorize the addition of a penal provision to the statute by enabling the Commissioner to include gross receipts and to exclude offsetting appropriate deductions for the particular tax year. In making up consolidated statements for 1929 and 1930 losses on transfers of securities between Innisfail and Smith such as their mutual sales of Chrysler, Hudson and Aldebaran shares (which the Tax Court has rejected as to the respondent) should not be recognized. In determining the loss to Innisfail in 1929 on the sale of the Gimbel stock on the open market, the basis should be the original cost to the taxpayer as adjusted by the loss he claimed when he transferred that stock to Innisfail in 1927. The orders must be reversed and the proceedings remanded to the Tax Court to determine the amount of taxes recoverable for the respective years. This amount will

be the taxes properly computed on a consolidation of the returns of Smith and Innisfail for 1929 and 1930 or the deficiencies assessed by the Commissioner against the taxpayer, whichever may be smaller. Such a limitation is necessary because the Commissioner's recovery cannot exceed his claims, which were based on the omission of the Tax Court to include the additional dividends of $92,667 in 1929 and $88,915 in 1930.

Orders reversed and proceeding remanded with directions to recompute the tax in accordance with this opinion.