PERRY R. BASS AND NANCY LEE BASS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2424–66.   Filed July 22, 1968.

*Martin A. Roeder, Harry C. Weeks, Edward First,* for the petitioners.

*James F. Hart,* for the respondent.

FEATHERSTON, *Judge:* Respondent determined a deficiency in petitioners' joint Federal income tax for 1963 in the amount of $2,829.54. The sole issue presented for decision is whether petitioners' wholly owned foreign corporation is to be disregarded for tax purposes.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations and exhibits thereto are incorporated herein by this reference.

The petitioners are husband and wife, citizens of the United States, who reside in Fort Worth, Tex., which was their place of residence at the time of filing the petition herein. They filed their income tax returns with the district director of internal revenue at Dallas, Tex.,

---

for the years 1961, 1962, and 1963 utilizing the cash receipts and disbursements method of accounting on a calendar year basis.

Stantus A.G. is a corporation duly organized under the laws of Switzerland on or about November 3, 1960. Its board of directors consists of three persons who have always been citizens and residents of Switzerland. Neither petitioner was ever a director, officer, or employee of Stantus A.G.

The authorized capital of Stantus A.G. consisted of 100 shares of common stock, each of a par value of Sw Fr 1,000. At the time of organization, the petitioner, Perry R. Bass (hereinafter referred to as petitioner), acquired for cash all of the outstanding stock of Stantus A.G. except three shares which are held by the directors of the corporation for the benefit of petitioner. The original cash invested by petitioner amounted to Sw Fr 107,562.50 ($25,000), which amount was credited on the books of Stantus A.G. as follows:

|  | Sw Fr |
|---|---|
| Capital stock | 100,000.00 |
| Due to shareholders | 7,562.50 |

On December 20, 1960, petitioner transferred an additional amount of $22,000 to Stantus A.G. as paid-in capital.

Prior to the organization of Stantus A.G., petitioner was the owner of 97.96 percent of a 43.7-percent interest in and to certain oil and gas leases in Gaines County, Tex.

As of March 1, 1954, the 10 coowners of the leases of the properties involved herein, including petitioner's predecessor in title, entered into a joint operating agreement providing, inter alia, for the development and operation of the subject lands for the production of oil, gas, and other hydrocarbon substances; for the designation of Honolulu Oil Corp. as operator to be in charge of all exploration, drilling, development, and producing operations; for the sharing of costs; for the delivery to each party of their respective shares of production in kind; and, in deep detail, for the general management of the joint venture.

On December 22, 1960, petitioner sold to Stantus A.G., for $21,000 which was duly paid to petitioner by Stantus A.G., an undivided 25 percent of a 43.7-percent working interest in the aforesaid oil and gas leases. Stantus A.G. took the properties subject to the operating agreement and assumed its proportionate share of the obligations under the operating agreement. The sale was evidenced by a "Memorandum of Sale" and a formal "Assignment of an Undivided Interest in Certain Oil and Gas Leases." The memorandum of sale was duly

approved and accepted by the other parties to the operating agreement. The assignment was delivered to Stantus A.G. in January 1961 and was recorded on January 26, 1961, in the oil and gas records of Gaines County, Tex., in volume 136 at pages 504, *et seq.*

The transfer of the undivided 25-percent interest in the oil and gas properties from petitioner to Stantus A.G. was recorded on the books of petitioner as follows:

| | | |
|---|---:|---:|
| Cash | $21,000.00 | |
| Res. for dep. lse. equip | 211.39 | |
| Lease equip | | $13,287.68 |
| Misc. inc., sale of asset | | 7,923.71 |

Petitioner included and reported the aforesaid profit of $7,923.71 in his gross income for the year 1961 as a long-term capital gain.

At about the time of its organization, Stantus A.G. opened a Swiss franc bank account at the Union Bank of Switzerland in Zurich; and, on January 3, 1961, it opened a U.S. dollar account at the same bank. These accounts were maintained throughout the year 1963. They constituted the only bank accounts of Stantus A.G.

Following the transfer to it of the working interests in the oil and gas leases, Stantus A.G. executed and delivered division orders with respect to its properties. The division orders, in brief, constituted representations to the purchaser of the production from the properties that Stantus A.G. owned its designated share thereof and that the purchaser was authorized to receive the production, giving the credit therefor to Stantus A.G. They also provided, *inter alia*, for delivery of the production of Stantus A.G. to the purchaser; the measurement of the products sold; the price to be paid therefor and the methods of payment by monthly checks to be mailed to Stantus A.G. in Zurich, Switzerland. Division orders were entered into with Indiana Oil Purchasing Co. and Pan American Petroleum Corp.

The Pan American Petroleum Corp. succeeded Honolulu Oil Co. as operator under the joint operating agreement and acquired Honolulu Oil Co.'s interest in the properties involved herein on October 18, 1961.

Throughout all periods relevant hereto, Stantus A.G. received and duly paid monthly bills for its share of the costs of operation and development of the mineral properties in which it had an interest. These invoices set forth the proportionate share of monthly operating and other expenses, including capital costs and drilling expense, to be paid by Stantus A.G.

Throughout all periods relevant hereto, Stantus A.G. received substantial revenues from the sale of its share of the oil and gas produced from the properties which it owned.

The following table shows the gross income and the expenditures of Stantus A.G. with respect to its oil and gas activities for the years 1961 to 1965, inclusive:

| | 1961 | 1962 | 1963 | 1964 | 1965 |
|---|---|---|---|---|---|
| Income: | | | | | |
| Oil and gas sales | $34,816 | $40,930 | $61,565 | $79,654 | $120,412 |
| Dividends | 187 | 254 | | | |
| Interest | 146 | 31 | | | |
| Expenditures: | | | | | |
| Oil production taxes | 1,576 | 1,906 | 3,012 | 3,787 | 7,706 |
| Interest | 1 | 4 | | | |
| Depreciation | 2,208 | 4,076 | 5,775 | 7,234 | 9,307 |
| Depletion | 9,574 | | 16,930 | 12,623 | 31,962 |
| Administrative | 2,142 | 3,195 | | 1,209 | 1,305 |
| Other costs | 152 | 7 | 1,824 | 178 | 145 |
| Lease operation expenses | 2,990 | 7,233 | 5,239 | 7,849 | 11,502 |
| Workovers | | 17,228 | 864 | | |
| Intangible drilling costs | 351 | 22,924 | 544 | 37,171 | 3,102 |

In the year 1962, Stantus A.G. had particularly heavy drilling and workover costs, as it was developing and drilling new wells, and it suffered a heavy loss.

As of December 31, 1963, the adjusted cost of the capitalized lease equipment of Stantus A.G. amounted to $57,148.54; and as of December 31, 1965, to $98,611.42.

On July 27, 1965, Stantus A.G. executed a contract with Pan American Petroleum Corp., as operator, and its coowners in the oil properties in which it had an interest calling for its participation in the construction and operation of a salt water disposal system for the wells in which Stantus A.G. owned interests. The agreement called for the construction of the system and the operation thereof by Pan American. Each party was to bear its proportionate share of costs and expenses.

On January 25, 1965, Stantus A.G. accepted a proposal which changed the accounting procedure in, and constituted an amendment of, the operating agreement of March 1, 1954.

Stantus A.G. maintained full accounting records in Switzerland which currently reflected all transactions. An independent firm of Swiss auditors was retained to certify financial statements of Stantus A.G. for the period from its inception to December 31, 1961, and for the years 1962 to 1964, reflecting the year's financial activities, and these statements were duly prepared and certified.

Shareholders' meetings of Stantus A.G. were held annually in Switzerland. At such meetings the minutes of the last meeting of shareholders were approved; the annual report was submitted and approved; decisions were taken as to what should be done with the profit or loss of the prior year; elections to the board of directors were made; auditors were selected; and releases to the directors for their prior services

were granted. The shareholders sometimes were present in person. At other times they were present by proxy.

Stantus A.G. was obliged under Swiss law to file Swiss tax returns. It was subject to cantonal tax and Swiss federal tax. The cantonal tax is levied on capital. The federal tax is on capital, surplus, and income. There is a further nonrecurring tax on the original issue of capital. Stantus A.G. filed such returns as were required and paid all Swiss taxes to which it was deemed subject.

On April 13, 1961, petitioner filed a U.S. information return with respect to the creation of Stantus A.G. The information return with respect to controlled foreign corporations for 1963 respecting Stantus A.G. and Form 959, as revised in January 1963, were also duly filed by petitioner.

Stantus A.G. duly filed its U.S. income tax returns for the calendar years 1961 to 1964, inclusive. The returns set forth the gross sales of oil and gas products of Stantus A.G., its other income, and the deductions and exemptions to which the corporation believed itself entitled. Attached to each return was a copy of a ruling issued by the Internal Revenue Service on September 7, 1960, that based on the facts submitted, Stantus A.G. was not subject to Federal income taxes pursuant to article III of the United States-Swiss Confederation Income Tax Convention.

Stantus A.G. from time to time bought and sold marketable securities and received dividends thereon.

## ULTIMATE FINDINGS OF FACT

Almost from the time of its creation, and including the year 1963, Stantus A.G. was actually engaged in the business of a nonoperating oil and gas producer. It participated in the drilling and development of its properties, the sale of the production therefrom, and the receipt and expenditure of the proceeds thereof.

Stantus A.G. is a taxable entity separate and apart from its shareholders.

## OPINION

In 1960, petitioner established a Swiss corporation, Stantus A.G., and sold to it an undivided 25 percent of an undivided 43.7-percent working interest in oil and gas leases. Since that time, Stantus has reported the income from its interest on its Swiss and United States tax returns, but has claimed exemption from United States taxes under a convention between the United States and Switzerland in accordance with a tax ruling issued September 7, 1960. The sole issue is whether Stantus is to be disregarded for tax purposes so that the in-

come and losses of the corporation constitute the income and losses of petitioner in the years 1961–63, inclusive.[1]

Respondent contends that the sole purpose for the incorporation of Stantus was to avoid taxes and its existence should, therefore, be ignored. The question presented is the familiar problem of form versus substance. The ground rules for the contest have been established by innumerable court decisions, which make it clear that a taxpayer may adopt any form he desires for the conduct of his business and that the chosen form cannot be ignored merely because it results in a tax saving. However, to be afforded recognition, the form the taxpayer chooses must be a viable business entity, that is, it must have been formed for a substantial business purpose or actually engage in substantive business activity. See, e.g., *Moline Properties, Inc.* v. *Commissioner*, 319 U.S. 436 (1943); *National Carbide Corp.* v. *Commissioner*, 336 U.S. 422 (1949); *National Investors Corp.* v. *Hoey*, 144 F. 2d 466 (C.A. 2, 1944); *Aldon Homes, Inc.*, 33 T.C. 582, 595–597 (1959).

It cannot be disputed that Stantus possessed the "salient features of corporate organization." *William F. Buckley*, 22 T.C. 1312, 1325 (1954), affd. 231 F. 2d 204 (C.A. 2, 1956). It was duly organized according to the laws of Switzerland. The *"Statuten,"* or articles of incorporation, provide for perpetual existence, with centralized management in the board of directors. It issued stock, and paid the Swiss stamp tax thereon. The corporation maintained records comparable to a minute book, and journals reflecting income and expenditures. The management rendered reports to the stockholders (petitioners), and its financial statements were the subject of independent audits.

Stantus not only looked like a viable corporation, it also *acted* like a viable corporation. It purchased and held title to working interests in oil and gas leaseholds; assumed and paid its proportionate share of the obligations under the operating agreement covering such leaseholds; executed division orders for the disposition of production income; signed contracts relating to the management of its producing properties; collected income and deposited it in a bank account; paid expenses incurred in connection with its activities; and invested excess funds in securities. Stantus filed Swiss federal and cantonal tax returns and paid the tax disclosed thereon, and filed United States income tax returns. All of this constitutes substantive business activity.

---

[1] Respondent makes no claim to liability on the part of petitioner for taxes under the Revenue Act of 1962 which provides that certain types of income of controlled foreign corporations, even though undistributed, are to be included in the income of U.S. shareholders (as defined by the statute) in the year the income is earned by the foreign corporation. See secs. 951–954, I.R.C. 1954, as amended by Revenue Act of 1962, effective after Dec. 31, 1962. Nor does respondent assert any claim to liability under 1954 Code sec. 482.

Respondent discounts the significance of these business activities by Stantus on the theory that petitioner or his attorneys actually made the business decisions for the corporation. Respondent points to petitioner's wide experience in the oil and gas industry and the Swiss corporate directors' complete lack of knowledge of the industry, and to a close similarity between the securities investments made by the corporation and by petitioners, asking us to conclude that Stantus had no independent business significance. But these facts afford no ground for disregarding Stantus as a separate corporate entity. Long ago, the Supreme Court held that when a corporation carries on business activity the fact that the owner retains direction of its affairs down to the minutest detail makes no difference tax-wise, observing that "Undoubtedly the great majority of corporations owned by sole stockholders are 'dummies' in the sense that their policies and day-to-day activities are determined not as decisions of the corporation but by their owners acting individually." *National Carbide Corp.* v. *Commissioner, supra* at 433; see *Chelsea Products, Inc.*, 16 T.C. 840, 851 (1951), affd. 197 F. 2d 620 (C.A. 3, 1952).

Respondent also insists that Stantus is not worthy of treatment as a tax entity because, respondent asserts, petitioner created it to avoid taxes. While there is no direct evidence to support respondent's allegation, each United States income tax return filed by Stantus referred to a tax ruling issued September 7, 1960, to petitioners' counsel holding that a proposed Swiss corporation, to be named Stantus and to carry on business activities in much the same manner as the corporation here in question, would be exempt under the United States-Swiss Confederation Income Tax Convention, T.D. 6149, 1955-2 C.B. 814. While we do not here decide whether Stantus meets the requirements of the ruling or the convention, we infer that Stantus was created by petitioners with a view to reducing their taxes through qualification of the corporation under the convention. The test, however, is not the personal purpose of a taxpayer in creating a corporation. Rather, it is whether that purpose is intended to be accomplished through a corporation carrying out substantive business functions. If the purpose of the corporation is to carry out substantive business functions, or if it in fact engages in substantive business activity, it will not be disregarded for Federal tax purposes. *Jackson* v. *Commissioner*, 233 F. 2d 289, 290 (C.A. 2, 1956), affirming 24 T.C. 1 (1955); *John F. Nutt*, 39 T.C. 231 (1962), remanded on other grounds 351 F. 2d 452 (C.A. 9, 1965).[2]

---

[2] This Court has held, *Barber-Greene Americas, Inc.*, 35 T.C. 365, 383, 384 (1960), appeal dismissed (C.A. 7, 1961); *Pan American Eutectic Welding Alloys Co.*, 36 T.C. 284, 291 (1961), and respondent has ruled, I.T. 3757, 1945 C.B. 200, that a corporation will not be denied Western Hemisphere trade corporation tax benefits merely because it was

Whether a corporation is carrying on sufficient business activity to require its recognition as a separate entity for tax purposes is a question of fact and petitioner had the burden of proof. We think petitioner met the burden. He introduced documentary evidence of the activities and actions of Stantus, and the testimony of William R. Staehelin, a Swiss attorney and president of the corporation. We think that the testimony of the witness demonstrated that the corporation was managed as a viable concern, and not as simply a lifeless facade. Under these circumstances, Stantus' status as a separate entity cannot be ignored. *Moline Properties, Inc.* v. *Commissioner, supra; Columbian Rope Co.*, 42 T.C. 800 (1964); *Sam Siegel*, 45 T.C. 566 (1966).[3]

In order to reflect certain concessions made by the petitioner,

*Decision will be entered under Rule 50.*

---

purposely created and operated in such way as to obtain such benefits. Similarly, a corporation otherwise qualified should not be disregarded merely because it was purposely created and operated to obtain the benefits of the United States-Swiss Confederation Income Tax Convention.

[3] The cases relied upon by respondent (*Gregory* v. *Helvering*, 293 U.S. 465 (1935); *William C. Hay*, 2 T.C. 460 (1943), affd. 145 F. 2d 1001 (C.A. 4, 1944); and *Commissioner* v. *Smith*, 136 F. 2d 556 (C.A. 2, 1943)) involved situations where the corporations were mere skeletons. Stantus had significant flesh on its bones, with the result that these cases are clearly distinguishable. As explained in *National Investors Corp.* v. *Hoey*, 144 F. 2d 466, 468, the *Gregory* case "declares that to be a separate jural person for purposes of taxation, a corporation must engage in some industrial, commercial, or other activity besides avoiding taxation: in other words, that the term 'corporation' will be interpreted to mean a corporation which does some 'business' in the ordinary meaning; * * *." Stantus meets this test.