BETTY SUE LUKINS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lukins v. Commissioner
Docket No. 12251-89
United States Tax Court
T.C. Memo 1992-569; 1992 Tax Ct. Memo LEXIS 590; 64 T.C.M. (CCH) 899; T.C.M. (RIA) 92569; September 24, 1992, Filed Decision will be entered for petitioner. Shannon Gallagher, for petitioner. Cathy Goodson, for respondent. WELLS, Judge
WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined the following deficiency in and additions to petitioner's Federal income tax: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)(A)
6653(a)(1)(B)
6661
1986
$ 23,433 $ 4,830
$ 5,833
[1]
$ 5,858
Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the issues for us to decide are: (1) Whether for taxable year 1986 petitioner is prohibited from personally deducting interest and depreciation on real estate purchased in the name of Magnolia Ranch, Inc. (the corporation); (2) whether petitioner is liable for an *591 addition to tax under section 6653(a)(1)(A) and (B); and (3) whether petitioner is liable for an addition to tax under section 6661. FINDINGS OF FACT Some of the facts and certain documents have been stipulated for trial pursuant to Rule 91. The stipulations of fact are incorporated in this Opinion by reference. At the time petitioner filed her petition in the instant case, she resided in Ojai, California. Petitioner has been divorced since 1979. On her Federal income tax return for taxable year 1986, petitioner reported dividends and capital gains as her major sources of income. On her return, she also reported rental income and expenses from two properties located in Oceanside, California, and income and expenses from boarding horses. On Schedule A, she reported home mortgage interest of $ 36,994, and, on Schedule F, she reported depreciation of $ 8,351. On July 25, 1985, petitioner signed a document entitled Real Estate Purchase Contract and Receipt for Deposit for the purchase of 2264 East Ojai Avenue, which encompassed 5 acres of vacant land. The purchase price was $ 200,000. Also, on July 25, 1985, petitioner signed a document entitled Real Estate Purchase Contract *592 and Receipt for Deposit for the purchase of 2296 East Ojai Avenue, which encompassed a house and 3 acres of land adjacent to 2264 East Ojai Avenue. The purchase price of such property was $ 280,000. Together, 2264 and 2296 East Ojai Avenue were known as Topa Vista Ranch (the ranch). When petitioner signed the contracts, she intended to purchase the ranch in her individual capacity for use as her personal residence. On October 22, 1985, in her individual capacity, petitioner signed several documents to finance the purchase of the ranch. She signed escrow instructions with Security Pacific National Bank, the escrow company. The escrow instructions indicate that petitioner was borrowing $ 320,000. She signed a document prepared by County Savings Bank which requested that she complete certain documents to obtain her loan in the amount of $ 320,000. She signed an agreement with County Savings Bank stating that all terms of the loan to acquire the ranch were expressed in writing. She signed, under penalty of perjury, a declaration stating that she intended to occupy the property as her primary residence and that she understood without such declaration County Savings Bank might *593 not approve the loan. She signed a Federal Truth in Lending Disclosure Statement showing County Savings Bank as creditor and petitioner as borrower. She signed a Good Faith Estimate showing an itemization of the closing charges and listing petitioner as the borrower. She signed a 30-year promissory note, loan number 20503557-0, for $ 320,000 with an interest rate of 10.25 percent per annum and monthly payments of $ 2,867.52. Petitioner also signed two purchase money promissory notes in which she promised to pay the sellers of the ranch $ 135,000 and $ 40,000. The notes were secured by deeds of trust. On October 24, 1985, petitioner executed the Articles of Incorporation for the corporation and on October 25, 1985, such articles were filed with the Secretary of State. The Articles of Incorporation state that the purpose of the corporation was to "engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California". Petitioner is the sole shareholder, director, and officer of the corporation. Although the above-described documents relating to the purchase and financing of the ranch were prepared in petitioner's individual *594 name, at closing, title to the ranch was not taken in petitioner's name. Instead, the ranch was titled in the name of the corporation. Petitioner did not want to publicly record her residence in her name because she was concerned that her ex-husband would be able to use such information to locate her and her son. Petitioner felt that her ex-husband was dangerous to her and to her son as her ex-husband had threatened them. Petitioner's sole purpose in forming the corporation was to title the ranch in the corporation's name so that the transaction would not appear of record in her name. In a letter dated October 24, 1985, Mr. Stephen Frank, an attorney for the corporation, notified the County Savings Bank that the corporation had been formed and that petitioner was authorized by corporate resolution to purchase the ranch and sign any documents necessary to complete the purchase on behalf of the corporation. Petitioner signed, as director and president, the corporate resolution authorizing the purchase of 2296 East Ojai Avenue. Thereafter, on October 28, 1985, the corporation adopted by-laws. On October 31, 1985, Mr. Frank issued an opinion letter to County Savings Bank stating *595 that the "corporation as a borrower is duly organized and validly existing". Mr. Frank also stated in the opinion letter that the "loan documents which I assume have been executed and delivered, may be signed exclusively by * * * [petitioner] and constitute valid legal obligations against the borrower corporation." Thereafter, on November 5, 1985, petitioner, as president of the corporation, signed all of the documents necessary to complete (and finance) the purchase of the ranch. The corporation never opened a bank account. The corporation never filed corporate tax returns, provided services, made sales of any goods, or had any employees. Other than the ranch, the corporation had no assets. Petitioner considered herself the legal owner of the property. Petitioner personally made the payments to the bank on the acquisition with checks drawn on her personal account. Petitioner also issued checks from her personal account to the sellers of the ranch in payment of the notes to the sellers. During taxable years subsequent to the taxable year in issue, petitioner subdivided a portion of the ranch. In subdividing the ranch, she signed, as president of the corporation, an ownership *596 statement which was filed in the official records of Ventura County, California. Petitioner individually negotiated the sale of two parcels of the ranch and believed that she was selling the property in her individual capacity. Both deeds stated that petitioner, on behalf of the corporation, and petitioner, as an individual, transferred the land. Both deeds were recorded in the official records of Ventura County, California. Petitioner, on behalf of the corporation, granted two easements over a portion of the ranch. One easement was granted to the purchasers of one of the two parcels petitioner sold. The record is not clear regarding the relationship of petitioner to the recipients of the second easement. Both easements were recorded in the official records of Ventura County, California. Petitioner never attempted to dissolve the corporation under the laws of the State of California. OPINION We must decide whether petitioner is entitled to income tax deductions for interest on indebtedness used to acquire the ranch and depreciation of ranch facilities used for the purpose of boarding horses. Respondent contends that petitioner is not entitled to deduct such interest and *597 depreciation on her individual tax return because the ranch is owned by petitioner's wholly-owned corporation, rather than by petitioner. Petitioner contends that the corporation should be disregarded because the corporation was not formed for any business purpose and did not engage in business, but merely held title to the ranch. [1] Petitioner has the burden of proof. Rule 142(a). Generally, a corporation is a taxpayer separate and distinct from its stockholders. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 442 (1934). *598 Moreover, a corporation is separate and distinct even if the corporation is wholly-owned by one shareholder. Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 420 (1932). A corporation will not be disregarded for tax purposes where the corporation is a "viable business entity", i.e., the corporation was formed for a real business purpose or actually engaged in independent business activity. Shaw Construction Co. v. Commissioner, 323 F.2d 316, 320 (9th Cir. 1963) (citing Aldon Homes, Inc. v. Commissioner, 33 T.C. 582, 597 (1959)), affg. 35 T.C. 1102 (1961); Bass v. Commissioner, 50 T.C. 595, 600 (1968). The Supreme Court stated in Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 438-439 (1943): Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying *599 on of business by the corporation, the corporation remains a separate taxable entity. [Citations omitted; fn. ref. omitted.] The degree of corporate business purpose or business activity requiring recognition of a corporation's separate existence, however, is minimal. Strong v. Commissioner, 66 T.C. 12, 24 (1976), affd. 553 F.2d 94 (2d Cir. 1977). Nonetheless, in the absence of an intention that the corporation was formed for some real business purpose or actually engaged in business, a corporation may be disregarded. Jackson v. Commissioner, 233 F.2d 289, 290 (2d Cir. 1956), affg. 24 T.C. 1 (1955); Bass v. Commissioner, supra. A corporation which only holds title to property and engages in transactions essential to the holding and transferring of such title is an example of a corporation which may be disregarded for tax purposes. Taylor v. Commissioner, 445 F.2d 455, 457 (1st Cir. 1971), affg. T.C. Memo. 1966-29; Jackson v. Commissioner, supra at 290-291; *600 Mulligan v. Commissioner, 16 T.C. 1489 (1951). Once such corporation, however, engages in business activity with regard to the property, its separate tax existence is established. Taylor v. Commissioner, supra; Paymer v. Commissioner, 150 F.2d 334, 336-337 (2d Cir. 1945); Strong v. Commissioner, supra at 23-24; Bolger v. Commissioner, 59 T.C. 760, 766 (1973). The issue is a question of fact. Moline Properties, Inc. v. Commissioner, supra at 440. Applying the foregoing principles, we first decide whether, in creating the corporation, petitioner intended it to have a real business purpose. For purposes of deciding whether a corporation is a separate taxable entity, the term "business" is used in the context of its ordinary meaning. Shaw Construction Co. v. Commissioner, 323 F.2d 316, 320 (9th Cir. 1963), affg. 35 T.C. 1102 (1961). According to Black's Law Dictionary 179 (5th ed. 1979), business is defined as: "Employment, occupation, *601 profession, or commercial activity engaged in for gain or livelihood." Additionally, the Supreme Court, in defining a trade or business, has stated: We accept the fact that to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify. [Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).] Respondent contends that the business purpose for the corporation was to obtain the advantage of limited liability under the laws of California. Respondent points to the corporation's broad corporate purpose and the fact that petitioner boarded horses on the ranch as evidence that the corporation had sufficient business purpose to qualify as a separate taxable entity under Moline Properties. We do not, however, consider the boilerplate language of the corporation's articles of incorporation alone sufficient evidence to prove the corporation's business purpose. Such boilerplate language appears to have merely been used for the purpose *602 of satisfying State law requirements for incorporation, i.e., to define the scope of activities in which the corporation is authorized to engage. Moreover, the mere fact that petitioner boarded horses at the ranch does not require the conclusion that she formed the corporation to limit her liability. Because petitioner personally carried on the boarding activities outside of the corporation, by her sole ownership of the corporation, she subjected the ranch to claims of her creditors. Accordingly, we do not accept the reasons posited by respondent as petitioner's purpose for incorporating the ranch. To the contrary, the record clearly shows that petitioner did not intend for the corporation to have a real business purpose. Petitioner's sole intention was for the corporation to act as titleholder of the ranch, a purpose which permits the corporation to be disregarded. Paymer v. Commissioner, supra at 336-337; Mulligan v. Commissioner, supra at 1492. Petitioner credibly testified that she did not want to record the title of her personal residence in her name because her ex-husband was a threat to her and her *603 child. We are convinced that petitioner simply never intended for the corporation to engage in any business activity. We turn next to consider whether, following incorporation, the corporation actually carried on business. Moline Properties, Inc. v. Commissioner, supra at 439. In the instant case, the corporation did not produce or sell any goods, have employees, keep corporate records, file tax returns, or maintain a bank account. It had no assets, other than the ranch which was an asset titled in the corporation's name only in a technical sense. Moreover, the corporation, by executing the documents pertaining to the financing of the purchase of the ranch, did not perform any activity which petitioner had not already done individually. During the year in issue, the corporation engaged in no activity whatsoever. It merely continued to hold title to the ranch. During the year in issue, the only activities in which the ranch was involved, such as boarding of horses, were carried on by petitioner individually. Petitioner personally paid the mortgage and note payments using funds from her personal checking account. The conclusion is inescapable *604 that petitioner treated the ranch as if she owned it personally. We note that, in years subsequent to the taxable year in issue, the ranch was subdivided and a portion of the ranch was sold. We, however, do not consider the ministerial actions of the corporation with respect to the subdivision, such as signing the subdivision documents and conveying title and easements, inconsistent with petitioner's purpose of creating the corporation solely for the purpose of holding title. Moreover, even though subdivision activities might be cast in the nature of a business, respondent does not argue that the corporation was engaged in such a business. Instead, respondent argues that the corporation, by signing the documents necessary to acquire and convey the ranch, satisfied the requisite business activity to require separate recognition of the corporate entity for tax purposes. In support of such argument, respondent cites O'Neill v. Commissioner, 271 F.2d 44 (9th Cir. 1959), affg. T.C. Memo. 1957-193. We find O'Neill to be distinguishable, however, because the corporation was engaged in the business of logging and milling. *605 It acquired property and mortgaged it extensively, apparently for business reasons. In contrast, in the instant case, the ministerial actions of petitioner's corporation were performed solely for the functions of holding and conveying title to the ranch and other functions consistent with that purpose. Petitioner's corporation never carried on any independent business activity. Respondent points out that in O'Neill the court took the corporate actions of signing deeds into account in reaching its conclusion that the corporation engaged in sufficient business activity to require separateness for tax purposes. We do not disagree that such corporate actions may and should be taken into account as one factor, but we do not think that the performance of ministerial corporate actions in and of itself is conclusive of the issue, especially where no regular corporate activity is continuously and regularly carried on for profit or gain. In the instant case, the activities of the corporation are distinguishable from those of other corporations that have not been disregarded as separate taxable entities. In such instances, those corporations were shown to be engaged in actual business *606 activities. See Taylor v. Commissioner, 445 F.2d 455, 457 (1st Cir. 1971), affg. T.C. Memo. 1966-29; Paymer v. Commissioner, 150 F.2d 334, 336-337 (2d Cir. 1945); Strong v. Commissioner, supra at 23-24; Bolger v. Commissioner, 59 T.C. 760, 766 (1973). Consequently, we hold that the ministerial actions of the corporation in the instant case did not amount to engaging in actual business and that the corporation acted merely as titleholder of the ranch for petitioner's personal purposes, which should be disregarded for tax purposes. Accordingly, we hold that petitioner is not liable for the deficiency and additions to tax determined by respondent. [2]
*607 To reflect the foregoing, Decision will be entered for petitioner. Footnotes
1. 50 percent of the interest due on the deficiency.↩
1. The parties also argue whether the corporation qualifies as an agent of petitioner that should be disregarded under the holding of Commissioner v. Bollinger, 485 U.S. 340, 344 (1988), affg. 807 F.2d 65 (6th Cir. 1986), affg. T.C. Memo. 1984-560↩. Because we hold below that the corporation merely held title and was not formed for a business purpose and did not engage in business, we need not reach a decision on the agency issue.
2. Respondent failed to argue in the alternative that if the corporation was disregarded, petitioner would still not be entitled to a depreciation deduction because she had not established that she was involved in a trade or business. We consider respondent to have conceded such argument.↩